Lydia **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–84–00301–CR.

Court of Appeals of Texas, San Antonio.

Sept. 4, 1985.

Rehearing Denied Oct. 7, 1985.

Donnie J. Coleman, Junction, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

Appellant was indicted for the murder of Jimmy Ellingwood. After a change of venue, appellant was convicted by a jury for the offense of murder and assessed punishment of twenty-two years' confinement in the Texas Department of Corrections. Appellant presents three grounds of error.

In the early morning of May 15, 1983, Jimmy Ellingwood was shot twice at his home in Menard, Texas. Although his condition improved for a time, he suffered a relapse and died on May 25, 1983. Appellant complains of the State's introduction of statements made by Ellingwood in which he named appellant, a girlfriend, as having shot him. Appellant put on several alibi witnesses whose testimony was that the appellant was elsewhere and could not have shot Ellingwood.

In ground of error number one, appellant alleges the trial court erred in admitting prejudicial opinion evidence, concerning facts in issue, as to the thoughts of Ellingwood.

In ground of error number two, appellant alleges the trial court erred in admitting, over her timely objection, dying declarations of Ellingwood without a proper predicate.

In ground of error number three, appellant alleges the trial court erred in holding the evidence sufficient to sustain the conviction because the evidence was insufficient to establish the appellant's identity as the actor perpetrating the alleged offense. Appellant alleges the trial court erred in holding the evidence sufficient to sustain the conviction because there was insufficient evidence to establish the identity of the appellant as the actor perpetrating the

alleged offense. In support of her contention, appellant argues that the State only had two items of evidence which implicated appellant in Ellingwood's death—the statements submitted as dying declarations and the statement by Trina Ellingwood that she heard her father yelling "Lydia" and appellant saying "be quiet."

Appellant appears to argue that the trial court erred in admitting hearsay statements of Ellingwood as related to Terry Zimmerman, Steve Whitson and Bobby Danford in the ambulance on the way to the hospital and to James Lobstein, an uncle, at the hospital three days before his death, and that if such testimony is properly excluded, the remainder of the record does not sufficiently show her connection with the death of Ellingwood in order to sustain a conviction.

The significance of the contention is that if it is sustained a retrial would be barred. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Therefore we will first consider appellant's third ground of error even though reversal may be based on another ground. *See Hooker v. State*, 621 S.W.2d 597 (Tex.Crim.App.1980). We will first eliminate from consideration the hearsay statements of Ellingwood to Zimmerman, Whitson, Danford and to his uncle, James Lobstein and we will examine the evidence of the other witnesses to ascertain if there is any inculpatory evidence which tends to connect the accused with the commission of the offense and to sustain the conviction.

The evidence identifying appellant is circumstantial and thus is sufficient to support a conviction only if the facts proved support a reasonable inference that appellant committed the crime and exclude to a moral certainty any inference consistent with appellant's innocence. *Burns v. State*, 676 S.W.2d 118, 120 (Tex.Crim.App. 1984); *Galvan v. State*, 598 S.W.2d 624, 627 (Tex.Crim.App.1979). The evidence in support of conviction must exclude every

other reasonable hypothesis except that of appellant's guilt. *Burns,* 676 S.W.2d at 120. The standard of review for sufficiency of the evidence is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983). If the evidence supports an inference other than the guilt of appellant or an inference other than a finding of one of the essential elements of the crime, a trier of fact cannot rationally find an accused guilty beyond a reasonable doubt. *Id.* at 472. To answer this ground of error, we must review the evidence adduced in an attempt to prove that appellant was in fact the perpetrator of the offense.

The witness, Ed Rainey, testified for the State that he saw appellant in her automobile going down Highway 83 at approximately 1:00 A.M. the morning of the murder. He further testified that Highway 83 is the road which leads from Andy's Club, a location that appellant's alibi witnesses testified she was at at the time of the murder, to appellant's house. Another State's witness, Ledezma, testified that the car which she had seen coming from a street near Ellingwood's home onto Highway 83 was gold and that she could not identify its driver. Medical testimony established that the slugs recovered from Ellingwood were both from the same .22 caliber weapon, but it was not determined whether that weapon was a pistol or a rifle. During the course of the investigation, it was discovered that a .22 caliber handgun owned by Ellingwood was missing from his bookcase headboard. Trina also testified that she had seen her father's car at appellant's house at noon on Thursday before the shooting and that it did not seem strange to her to see it there.

On cross-examination of the investigating officer, Sheriff Rendon, testimony was elicited that no attempt was made to lift fingerprints from the crime scene. Further, there was testimony that although appellant was arrested within an hour of the shooting, no attempt was made to check her for gun powder or to run any type of powder test. The only weapon ever searched for was Ellingwood's .22 caliber pistol which was never found. No investigation was made to see if Ellingwood's ex-wife owned a .22 caliber pistol or to compare ballistics on any other .22 caliber pistol in Menard. There was also testimony that Ellingwood kept his handgun in the bookcase headboard while he was married to his ex-wife, Mary Helen Carey. It was also shown that Carey told Ellingwood that he had been shot with his own gun; that she was the beneficiary of his $10,000.00 life insurance policy; and that she had returned to Menard two weeks before the shooting.

The appellant's witnesses, Cervantes, Garcia and Rodriquez testified that appellant was with them at Andy's Club until the dance was over at 1:00 A.M.; that Garcia and her husband drove away from the club before Cervantes and appellant; that Garcia and her husband drove directly to Cervantes' house some ninety feet from Ellingwood's house; that Garcia and her husband were in the driveway a couple of minutes until Cervantes got there and that they had been inside Cervantes' house for a couple of minutes when the ambulance arrived at Ellingwood's house.

The witness, Vargas, who lived across the street, seventy-four feet from Ellingwood's front door, testified that she heard two shots and someone yelling "Help, someone help me please, my daughter"; that she saw someone she assumed was Ellingwood at Ellingwood's door who then walked away from the door; that she heard someone call for help again while the person was standing at the door; and, that, thinking she was seeing Ellingwood and that he was drinking, went back to bed until she heard the ambulance. Vargas also testified that the morning after the shooting Sheriff Rendon came to her house to ask her about a report he had received that someone was seen at her house.

Ray and Rosa Hernandez testified that they left Andy's Club five or ten minutes before 1:00 A.M.; that they picked their baby up from a family a couple blocks from the Club; that they were getting out of the

car at their house when they heard gun shots; that when they went to see what was going on, they saw a person in a white shirt running down the street about a block from Ellingwood's. Cervantes and Garcia both testified that appellant was wearing a bright orange and yellow blouse that night.

■ The appellant argues that the evidence of a man standing in Ellingwood's doorway after the shots were fired, of a person in a white shirt running away from the house and of appellant's alibi, the facts do not exclude to a moral certainty any inference consistent with appellant's innocence. Appellant argues further that even if it was appellant's voice that Trina Ellingwood heard in the house that night, the mere presence of appellant at the scene is insufficient to prove that she committed the murder. *Burns,* 676 S.W.2d at 120; *King v. State,* 638 S.W.2d 903, 904 (Tex. Crim.App.1982). Appellant concludes that the circumstantial evidence presented by the State was clearly insufficient to exclude every reasonable hypothesis except appellant's guilt. We disagree.

The first witness who testified for the State, Edward Rainey, stated that he was familiar with appellant and her automobile and that he saw her at approximately 1:00 o'clock the morning of the incident coming from the direction of Ellingwood's house and heading in the direction of her own house. He further stated that approximately five minutes later he saw the emergency vehicle going in the direction of Ellingwood's residence. Trina, Ellingwood's thirteen year old daughter, testified that since her father's divorce from her mother, Mary Helen Carey, she had been living with her father. She further testified that she was familiar with appellant, as her father and appellant had been dating and had spent quite a bit of time together. It was not unusual for appellant to come and go at will from Ellingwood's residence. Trina related that her father had, within the week before he was shot, been seeing another woman from Houston. On the evening in question, the daughter testified that she went to bed and her father was

awake watching television. She awoke after hearing a gun shot and heard the appellant tell her father to "be quiet" and she heard her father calling out Lydia's name. Ellingwood called for his daughter and when she came into the room he was alone and lying on the floor.

As a rebuttal witness to appellant's alibi evidence the State called Rocky Valdez who testified that he had seen appellant on the evening in question at Andy's Club and that appellant had left some time before the dance was over, before 1:00 A.M., and that he had become aware of a telephone call concerning the shooting of Ellingwood at about 1:15 or 1:20 A.M., May 15, 1983. Another rebuttal witness, Alvina Ledezma, had been to the dance at Andy's Club and left when it was over at 1:00 A.M. She stopped along the street to visit with some friends and while stopped, she observed a vehicle come out of a side street. She recognized the car to be that of the appellant. One of the ambulance attendants, Terry Zimmerman, testified that the emergency call came over the scanner at 1:03 A.M., May 15, 1983.

We hold the circumstantial evidence presented by the State was sufficient to exclude every reasonable hypothesis except appellant's guilt. The trial court did not err in holding the evidence sufficient to sustain the conviction because the evidence was sufficient to establish the identity of appellant as the actor perpetrating the offense. Appellant's ground of error number three is overruled.

Certain witnesses were permitted to testify, over appellant's objection, about statements made by Ellingwood in two instances concerning the circumstances of his shooting and in particular, that appellant had shot him. These statements were allegedly made by Ellingwood while in the ambulance on the way to the San Angelo Hospital and in his hospital room three days before his death. In her grounds of error numbers one and two appellant complains that the court erred in permitting the witnesses Terry Zimmerman, Steve Whitson and Bobby Danford to testify as to Elling-

wood's statements while in the ambulance, and permitting the witness James Lobstein, to testify as to Ellingwood's statements to him at the hospital. Appellant contends that these statements were not dying declarations and therefore were inadmissible. We agree with appellant.

The statements of the deceased are hearsay and inadmissible unless they fit into an exception to the hearsay rule. In Texas, the admission of a dying declaration is regulated by statute. *See* TEX.CODE CRIM. PROC.ANN. art. 38.20 (Vernon 1979). That article provides:

The dying declaration of a deceased person may be offered in evidence, either for or against a Defendant charged with the homicide of such person, under the restrictions hereafter provided. To render the declarations of the deceased competent evidence, it must be satisfactorily proved:

1. That at the time of the making such declaration he was conscious of approaching death, and believed there was no hope of recovery.

2. That such declaration was voluntarily made, and not through the persuasion of any person.

3. That such declaration was not made, in answer to interrogatories calculated to lead the deceased to make any particular statement.

4. That he was of sane mind at the time of making the declaration.

*Id.; see also Herrera v. State,* 682 S.W.2d 313, 319 (Tex.Crim.App.1984); *Martinez v. State,* 533 S.W.2d 20, 22 (Tex.Crim.App. 1976).

In support of her contention in ground of error number one, appellant states that the trial court wrongfully allowed the State to ask witnesses Terry Zimmerman, Steve Whitson and Bobby Danford whether or not, in their opinions, the deceased appreciated that he might die and had no hope of recovery.

Appellant argues, and we agree, that while the State is permitted to elicit testimony from the witnesses that would permit the jury to infer the fact that the deceased was conscious of approaching death and believed there was no hope of recovery at the time he made the declaration, the State is not permitted to ask and a witness is not allowed to give an opinion as to whether a deceased thought he was going to die and whether he had given up hope of recovery. A witness is not allowed to give an opinion on an ultimate fact as questions of fact are to be determined by the trier of fact from all of the circumstances and the evidence. *Klein v. State,* 662 S.W.2d 166, 168 (Tex.App.—Corpus Christi 1983, no pet.); *Markham v. State,* 635 S.W.2d 153, 156 (Tex.App.—San Antonio 1982, no pet.). There are many cases in the jurisprudence of this State that have disallowed opinion testimony on an ultimate issue of fact that was to be determined by the jury. *See, e.g., Stein v. State,* 514 S.W.2d 927, 931 (Tex.Crim.App. 1974) (testimony that another was surprised prohibited as calling for speculation on part of witness); *Witty v. State,* 203 S.W.2d 212, 220 (Tex.Crim.App.1947) (State authorized to show declarant nervous but not have witness express opinion that declarant "expecting something to happen"); *Casey v. State,* 116 Tex.Cr.R. 111, 32 S.W.2d 461, 462 (1930) (game warden could testify appellant had jug of water and gun but error for warden to express opinion that appellant hunting out of season). Involving the issue of self-defense, Texas courts have long excluded opinion testimony by bystanders as to whether defendants perceived themselves to be in danger. If this were not done, the "rules requiring that witnesses state facts would be abrogated and cases be tried on a constantly broadening rule of conjecture and opinion." *Dunne v. State,* 98 Tex.Cr.R. 7, 263 S.W. 608, 612 (1923). If witnesses were allowed to so testify, trials would "soon resolve themselves unto a contest of conclusions and opinions of bystanders as to whether or not the appellant was apprehensive of an infliction of death or serious injury at the hands of his adversary." *Pounds v. State,* 150 S.W.2d 798, 801 (Tex.Crim.App.1941). If witnesses cannot testify as to whether a

defendant was apprehensive of an infliction of death, surely they should not be able to testify as to whether a deceased thought he was going to die and whether he had given up hope of recovery.

■ The questions of whether Ellingwood appreciated the fact that he might die and of whether he had any hope of recovery were clearly questions to be determined by the jury. Allowing the witnesses to express their opinion was prejudicial to appellant. When the jury is in possession of the same information as the witness and can draw its own inferences and conclusions, a witness' opinion is unnecessary and inadmissible. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981); 1 A. Ray, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1393 (Texas Practice 3d ed. 1980).

In ground of error number two, appellant alleges the trial court erred in admitting, over her timely objection, dying declarations of the deceased without a proper predicate. In support of this contention, the appellant argues the State failed to establish the first part of the predicate necessary for the admission of such dying declarations, to wit: that at the time of making such declaration he was conscious of approaching death, and believed there was no hope of recovery. The trial court limited the dying declarations to those made in the ambulance while transporting Ellingwood from the Menard Hospital Emergency Room to the San Angelo Hospital. Further, all statements made at the San Angelo Hospital were suppressed with the exception of the statement made to Ellingwood's uncle, James Lobstein, some three days before his death. The trial court determined the admissibility of the declarations in the absence of a jury during a pretrial hearing.

The opinion in the case of *Craven v. State*, 49 Tex.Cr.R. 78, 90 S.W. 311 (Tex. Crim.App.1905), is particularly instructive on the degree of consciousness of approaching death necessary to be proved. In *Craven*, the deceased made the statement "I believe I am fatally shot." The court held:

> This did not exclude the hope of recovery; nor does it show that he was conscious of approaching death, in the sense in which this statute means approaching death. Of course, every man knows, as a matter of fact, that ultimately he must die, and the fact that he may state a belief of the fact does not show, within the meaning of our statute with reference to dying declarations, a consciousness of approaching death. The predicate must exclude hopes of life. It must reach the point of a certainty in the mind of declarant that all hope of recovery is gone, and that he is conscious of then approaching death, and in his mind it must be the inevitable result.

> \* \* \* \* \* \*

> If the deceased had the slightest hope of recovery when the declarations, they were inadmissible. The words of our statute 'lost all hope of recovery' means that it is a belief in death which does exclude any hope of recovery.

> \* \* \* \* \* \*

> The declarant must be in extremis, and under the solemn conviction that he is bound to die and that all hope of recovery is eliminated from his mind.

*Id.* at 311.

■ The witness, Terry Zimmerman, testified that she sat next to Ellingwood's head on the trip to San Angelo, that he was stable, and that he expressed no concern about whether he would make the trip to San Angelo. So long as the declarant was unsure what would happen, he had hope of recovery. Unlike the declarant in *Whitson v. State*, 495 S.W.2d 944, 947 (Tex.Crim. App.1973), Ellingwood never stated that he "knew" he was going to die. Neither did the circumstances demonstrate that all hope of recovery were eliminated from his mind. The statements made by Ellingwood were in terms of "I don't believe I'm going to make it," and "I'm trying to hang on." We hold that the evidence illustrating the circumstances of the deceased's ambulance

trip from Menard to San Angelo, although showing Ellingwood in pain and worrying about his condition, did not rise to that level of certainty that death was imminent and that he had no hope of recovery.

■ We also find the evidence elicited through Ellingwood's uncle, James Lobstein, regarding what was said by Ellingwood to his uncle on May 22, 1983, in the hospital room some three days before Ellingwood's death, is insufficient to show that Ellingwood thought he was dying and had no hope of recovery. Aside from opinion testimony which was objected to on the same ground as the opinions elicited from other witnesses, the only evidence elicited by the State through Ellingwood's uncle, James Lobstein, was the following:

MR. SUTTON:

Q: What did he say when you were standing there by the bed?

THE WITNESS:

A: Said, 'She came to kill me and it looks like she did.'

We hold that evidence insufficient to satisfy the first part of the predicate for its admission.

■ Whether the improper admission of hearsay evidence requires the reversal of conviction is determined on a case by case basis. *Torres v. State*, 552 S.W.2d 821 (Tex.Crim.App.1977). Our duty is to determine from the record the probable impact of the erroneously admitted evidence upon "the minds of the average jury." *Schneble v. Flann*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). Unless there is a reasonable possibility that the improperly admitted evidence contributed to the defendant's conviction, reversal is not required. *Wilder v. State*, 583 S.W.2d 349 (Tex.Crim.App.1979).

■ We cannot conclude that the admission of hearsay testimony of Zimmerman, Whitson, Danford and Lobstein that Ellingwood said appellant shot him was reversible error where the evidence, absent such hearsay testimony, was sufficient to uphold the jury's finding of appellant's participation in the instant offense. There

was no reasonable possibility that the improperly admitted evidence contributed to appellant's conviction.

We hold the evidence to be sufficient to sustain the conviction. The judgment of the trial court is affirmed.

BUTTS, Justice, concurring in result.

I agree that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in this case, thus, the evidence is sufficient to support the conviction.

But I differ with the majority ruling that the dying declaration should be excluded from evidence because of deficiency in the predicate laid for its introduction.

The State introduced two dying declarations, therefore, the predicate for each hearsay statement must be found inadequate to deny admissibility. The criminal law in Texas at this time retains the well known exception to the hearsay rule, the dying declaration. TEX.CODE CRIM. PROC.ANN. art. 38.20 (Vernon 1979).

It is the first prong of the fact predicate which appellant argues falls short of the requirement, that is, the showing that the decedent was conscious of approaching death and believed there was no hope of recovery. The three other facts (or prongs) which must be shown are not challenged.

It is argued that permitting the witnesses to state their "opinion" of an ultimate fact issue, whether or not the decedent "appreciated" the fact that he might die, does not satisfy the statute.

The trial court first conducted a pretrial hearing and eliminated the testimony of other witnesses, but left these four as competent to testify to the fact predicate. At trial the State then submitted to the jury the testimony of the four witnesses. The pretrial ruling of the trial court was that the predicate as shown by the four witnesses was properly laid.

Texas is different when it comes to dying declarations. What was done in the

present case is permissible under Texas law. The trial court in this case followed Texas law and submitted to the jury the four-prong predicate in the form of fact questions. Thus, the jury was required to make findings on the fact issues. *See* 1A R. RAY, EVIDENCE § 975 (3rd ed. 1980).

I would hold under these circumstances that the predicate had been established; proof of the first fact may be considered a "short hand rendition," similar to describing intoxication. It was properly shown. The dying declaration became admissible in the case. Only to the majority ruling on the dying declaration do I respectfully dissent.