**Fredda Sue MOWBRAY, Appellant,**

*v.*

**The STATE of Texas, Appellee.**

**No. 13–88–432–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 12, 1990.
Rehearing Overruled May 3, 1990.

**662** 

Scott A. Young, Roy Minton, Charles R. Burton, Minton, Burton, Foster & Collins, Austin, for appellant.

Ben Euresti, Jr., County Criminal Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of murder and assessed a life sentence and a fine of $10,000. It also returned a finding that she used a deadly weapon during the commission of the offense. Appellant challenges her conviction by twenty-six points of error. We affirm the trial court's judgment.

By point one, appellant claims the evidence is insufficient to support the judgment. The State's theory was that appellant shot her husband while he slept. Appellant argues that the evidence did not exclude the reasonable hypothesis that the deceased shot himself. Appellant recounts certain evidence favorable to her defense theory that the deceased committed suicide. Specifically, she compares the testimony of three expert witnesses on the angle of the shot to the deceased's head, assuming that she and the deceased were positioned consistently with her taped statement.

 In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The jury is the exclusive judge of the facts, of the credibility of the witnesses, and of the weight to be given to their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

 Direct and circumstantial evidence are equally probative for proving guilt beyond a reasonable doubt. *Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Crim. App.1983) (on rehearing). In circumstantial evidence cases, every fact need not point directly and independently to the defendant's guilt. It is enough if the combined and cumulative force of all of the incriminating circumstances warrants the conclusion. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Ramos v. State,* 767 S.W.2d 248, 249 (Tex.App.—Corpus Christi 1989, pet. ref'd).

 The deceased was shot in bed at night. The only occupants of the room in which the shooting occurred were the deceased and appellant.

The defense theory was that appellant and the deceased were lying in bed with a pillow barrier between them when appel-

lant saw the deceased's elbow point upward. When she reached to touch it, the gun went off. Appellant made a taped statement about the shooting, and the tape was admitted into evidence. Witnesses to the appellant's statements recalled that appellant indicated that she had used her left hand to reach toward the deceased. The State, however, introduced a crime lab supervisor's analysis of appellant's nightgown showing traces of lead or gunshot residue on the lower right sleeve. That witness, Steve Robertson, conducted tests with the gun found at the scene and opined that the residue was consistent with someone firing that gun.

Estella Mauricio, who was dispatched to the Mowbray residence just after the shooting, testified that she found the deceased, still alive and shot through the head, lying on his left side and covered all the way up to his shoulder. The bullet had entered the right side of his head, exited the left, and wounded his left hand, which was under his head with a pillow between his head and left hand. The right hand was lying across his chest under the covers. There was no blood or brain matter on the right hand and she did not ever see his hand being washed at home or at the hospital. Emergency technician Cavazos also recalled that the victim was completely covered, with only the right side of his face and the top of his head showing, when he arrived, although later the deceased was uncovered. Mauricio testified that he was positioned like a sleeping person, and the deceased's first cousin, Scott Mowbray, testified that the deceased slept in the position in which he was found.

Dr. Dahm, who conducted the autopsy, stated that if the deceased had shot himself, his right hand would have been covered with blood and brain matter. He found no such blood or brain matter on the deceased's right fingers, hand, or forearm. Dahm testified it would be impossible for the deceased to have shot himself and the hand be clean, and concluded that the death was a murder.

Appellant argues that the jury ignored the evidence favorable to her, particularly that of Tom Bevel, who recreated for the jury a scenario consistent with her taped statement and in which she would have received the stain and spatter pattern on her nightgown. However, Bevel conceded that it could be murder, and appellant's theory did not account for the deceased's clean right hand and the gunshot residue on her right sleeve. We hold the evidence sufficient, and overrule point one.

■ By point twenty-two, appellant contends that her conviction should be reversed because the trial court did not hold a *Jackson v. Denno* hearing before admitting her taped statement. *See Jackson v. Denno*, 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964). Defense counsel filed a motion for a hearing on voluntariness before trial, but obtained no ruling on it. During trial, after Olsson testified about how he made the tape, the State offered the tape recorder and tape into evidence. The defense attorney stated, "We have no objection, your honor."

Tex.Code Crim.Proc.Ann. art. 38.22 § 6 (Vernon 1979) provides for an independent finding, in the absence of the jury, of the voluntariness of an accused's statement if the question is raised. In *Ross v. State*, 678 S.W.2d 491, 493 (Tex.Crim.App.1984), the Court held that art. 38.22 does not require the trial court to hold a pretrial hearing, and stated that a trial court could "wait until the defense makes a timely objection at trial before holding the hearing." Appellant has not shown that she brought the issue of voluntariness to the trial court's attention at any time before the tape was admitted. Thus, the complaint is not properly before us for review. *See Taylor v. State*, 489 S.W.2d 890, 892 (Tex.Crim.App.1973); *Sanders v. State*, 715 S.W.2d 771, 775 (Tex.App.—Tyler 1986, no pet.)

■ Moreover, absent evidence which raises an issue of voluntariness, no finding on voluntariness is required. *Trybule v. State*, 737 S.W.2d 617, 621–22 (Tex.App.—Austin 1987, pet. ref'd.). Before the tape was admitted, Olsson testified that he asked to tape appellant's statement and left the tape player in plain view. He said

he read her rights to her and she signed a Miranda card. The defense voir dire about the quality and accuracy of the tape because of a tape recorder malfunction raised no voluntariness issue, nor have we found evidence to support a conclusion that the statement was not voluntary in any other testimony. We overrule point twenty-two.

By point twenty-three, appellant claims the trial court erred in denying her motion to suppress evidence seized at her home pursuant to a search warrant. Appellant specifically complains of the use of an insurance schedule at trial, since the State mentioned that insurance could be a motive for the murder. The State replies that the insurance schedule introduced at trial was not the one seized under the challenged search warrants.

Sergio Hernandez, who was business manager for the deceased's car lot, testified that, although she had never talked to him about it before, some six or eight weeks before the shooting, appellant went to the business and asked about what kind of insurance the business had. He showed her a list of insurance policies, including life insurance policies, on which she was the beneficiary. He did not give her the list, and she did not ask for a copy; the interview lasted less than five minutes, and she looked at the list for five seconds or less. The State introduced the list through Hernandez, and did not introduce any other insurance schedule nor connect any with her home, nor show at trial that she possessed any. Thus, the insurance schedule admitted is not shown to be the same one seized. The only item which appears on the "return and inventory" and was introduced at trial was the brown wooden switch box (electrical) (SX 17). The existence, appearance, or position of the box was not at issue. It was introduced without objection. Appellant's taped statement mentions that the deceased kept the gun in the box. The housekeeper had seen the gun there and believed the deceased normally slept on the side by the box. That night appellant and the deceased had changed sides of the bed. Both housekeeper and Scott Mowbray testified the box

controlled lights. Introduction of the actual box was cumulative of testimony and not relevant to the issues at trial. Any error was harmless. We overrule point twenty-three.

By points two and three, appellant complains of the prosecutor's argument at the guilt phase of the trial, alleging improper comments on appellant's election not to testify and on her exercise of her right to counsel. Appellant's counsel voiced no objection to either argument, nor did he request an instruction to disregard. Unless an argument is so inflammatory that an instruction to disregard cannot alleviate its prejudicial effect, the failure to request an instruction to disregard waives error. *Parr v. State*, 606 S.W.2d 928, 931 (Tex. Crim.App.1980).

To determine whether an improper argument is incurable error, we review the entire record to ascertain the probable effect of the argument on the minds of the jurors. *Crowe v. State*, 400 S.W.2d 766, 768 (Tex.Crim.App.1966); *Medrano v. State*, 658 S.W.2d 787, 793 (Tex.App.— Houston [1st Dist.] 1983, pet. ref'd). We also examine the alleged error in context of the entire argument. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Henson v. State*, 683 S.W.2d 702 (Tex.Crim. App.1984).

Proper jury argument encompasses one of the following areas: summation of the evidence, reasonable deduction from the evidence, answer to the opposing counsel's argument, or plea for law enforcement. *Gaddis*, 753 S.W.2d at 398; *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim.App.1987). Counsel is allowed wide latitude in drawing inferences from the evidence so long as they are fair, legitimate, and offered in good faith. *Gaddis*, 753 S.W.2d at 398. The invited argument rule permits response to opposing counsel's argument, outside the record, except that the response may not exceed the scope of the invitation. *See Pyles v. State*, 755 S.W.2d 98, 116 (Tex.Crim.App.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Albiar*, 739 S.W.2d at 362, *Johnson v. State*, 611 S.W.2d 649, 650 (Tex.

Crim.App.1981); *see Rushton v. State,* 698 S.W.2d 451, 457 (Tex.App.—Corpus Christi 1985, pet. ref'd), *cert. denied,* 484 U.S. 862, 108 S.Ct. 178, 98 L.Ed.2d 131 (1987).

 Counsel may paraphrase the court's charge, and reiterating the accused's right not to testify is not in derogation of his rights but in support of them. *Short v. State,* 511 S.W.2d 288, 291 (Tex.Crim.App.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Neaves v. State,* 725 S.W.2d 785, 787 (Tex. App.—San Antonio 1987), *aff'd,* 767 S.W.2d 784 (Tex.Crim.App.1989). An accused's prearrest silence is a constitutionally permissible area of inquiry. *Waldo v. State,* 746 S.W.2d 750, 755 (Tex.Crim.App.1988). When invited, a prosecutor may refer to an accused's failure to testify. *Zertuche v. State,* 774 S.W.2d 697, 699 (Tex.App.—Corpus Christi 1989, pet. ref'd).

 Point two addresses this argument:

*And what does the defendant say?* First of all, no one has talked to you about this, but part of the charge says that our law provides that the defendant may testify in his own behalf, however, it is his privilege. And it goes on to say that the defendant did not testify and you cannot consider that. *I know we all would have liked to have heard a second version about it* ... (emphasis added).

Our review of the record reveals that the argument highlighted the section of the charge about appellant's failure to testify, and can be taken as a reaffirmation of appellant's rights. Additionally, it referred to appellant's taped statement, which was in evidence. Moreover, before the comment was made, appellant's attorney had argued that "Susie has spoken to you" and "told her story" through the taped statement, and had argued that appellant's defense was consistent with the taped statement. Thus, examined in context, to any extent that the remarks were not a reiteration of the charge, they were an answer

to opposing counsel's argument and within the scope of the invitation.

Point three complains of this argument:

She's covered all the bases. And then she says, "Daddy, I didn't do anything." And two days later she's with a board-certified criminal lawyer. He's been involved with the case as long as we have. Mr. Burnett is down there, remember Mrs. Ray, Mr. Cunningham? Two days later she got two high-powered criminal defense lawyers, one from out of state....

 Appellant's father testified that appellant submitted to a taped interview the morning of the shooting, and at that time, the officer told her she had a right to have a lawyer, and she said, "Daddy, I haven't done anything wrong. I don't need a lawyer." Luke Fruia testified that attorneys Ray and Cunningham were there the day of the death and attorney Burnett was there during the funeral. Bush testified she saw appellant's attorney, Toscano, the weekend of the shooting. At trial, her attorneys were Toscano, Burnett, and Robertson. Appellant's counsel mentioned the language of appellant's refusal of legal counsel during his closing argument that the taped statement was true. Appellant was never arrested until December 5, 1987, over two months after the shooting.

We find that the state's argument, to the extent it is outside of the record, was invited by appellant's counsel's argument. We overrule points two and three.

Appellant's fourth point cites as error the trial court's refusal to grant a mistrial after the jury heard evidence that she exercised her right to remain silent on the advice of counsel. The shooting occurred on September 16, 1987, a Wednesday, and appellant was not arrested until December. On direct examination, Lt. Gavito testified that he asked appellant on Friday to give him a written statement, but her attorney then came by to see the evidence, and then later called to tell him he had advised appellant not to talk to him, so he never got a written statement. The trial court then interrupted the proceedings sua sponte and, when proceedings resumed, instructed

the jury to disregard any evidence about the request for a statement, but overruled appellant's request for a mistrial.

Appellant argues that the fact that she had not been arrested at the time she was asked to give the written statement does not make it less of a violation of her Fifth Amendment right to silence to present evidence of her refusal to give a statement, since she had been given Miranda warnings before her taped statement Wednesday morning.

■■■■■ Appellant cites cases that an individual's post-arrest silence may not be used against him for any purpose. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Sanchez v. State,* 707 S.W.2d 575, 580 (Tex.Crim. App.1986). However, it is clearly permissible to inquire into pre-arrest silence. *Jenkins v. Anderson,* 447 U.S. 231, 238–239, 100 S.Ct. 2124, 2129–2130, 65 L.Ed.2d 86 (1980); *Waldo,* 746 S.W.2d at 752. Moreover, a trial court's instruction to disregard usually cures error if prejudicial information is imparted to the jury. *Waldo,* 746 S.W.2d at 753–54. We overrule point four.

By points five and six, appellant complains of the trial court's refusal to excuse veniremember Cesar Maldonado for cause, and its granting of the State's challenge for cause to veniremember Ana Maria Rivas. During voir dire of Maldonado, he indicated he had heard some of the facts, but would not be affected. Then he volunteered that if appellant were found guilty, he would have a difficult time considering probation. The trial court questioned Maldonado further, and he then stated unequivocally that, not knowing the facts, he would consider probation. At the end of the interview he said, "If an individual is guilty of murder I would be biased against probation."

During voir dire of Rivas, she indicated that she had heard about the case from a newspaper and had discussed it with friends. When asked her thoughts on appellant's guilt, she replied, "Maybe I think she's not guilty." She indicated that the thoughts might stay in her mind, that she had gotten the idea that it might be a

suicide, and that she thought that that thought might stay in her mind. The trial court struck her for cause.

■■■■■ The conduct of voir dire examination is within the sound discretion of the trial court. *Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App.1988). When bias or prejudice are not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the juror is disqualified. *Anderson v. State,* 633 S.W.2d 851, 853–54 (Tex.Crim.App.1982). A trial court's refusal to sustain a defendant's challenge for cause will be reviewed in light of all the prospective juror's answers. *Williams v. State,* 773 S.W.2d 525, 537 (Tex.Crim.App.1988); *Faulder v. State,* 745 S.W.2d 327, 339–40 (Tex.Crim.App. 1987). A venireperson who demonstrates an inability to consider the full range of punishment is subject to challenge for cause. *See Williams,* 773 S.W.2d at 536; *Faulder,* 745 S.W.2d at 339; *Barrow v. State,* 688 S.W.2d 860, 863 (Tex.Crim.App. 1985).

■■■■■ In deciding on the propriety of the court's ruling on challenges for cause during voir dire, we keep in mind that the trial judge has had the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended, while we have only the "cold record." *Briddle v. State,* 742 S.W.2d 379, 384 n. 1 (Tex.Crim.App.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Tezeno v. State,* 484 S.W.2d 374, 383 (Tex.Crim.App.1972); *Henley v. State,* 644 S.W.2d 950, 955 (Tex. App.—Corpus Christi 1982, pet. ref'd). Considering the totality of the venirepersons' answers, we find no abuse of discretion. We overrule points five and six.

By points seven through twenty-one, appellant contests the exclusion of testimony on three questions: whether appellant was capable of killing the victim, whether the deceased was capable of killing himself, and whether appellant was a warm and caring person. Appellant complains that five witnesses were not permitted to an-

swer certain questions before the jury: Modesta del Angel, who had been the live-in maid for about four years before the shooting, Wade Burnett, who was appellant's son, Luke Fruia, who had been general manager and vice president of the deceased's business, Judy Sanchez, who was a longtime friend of the deceased's, and Sarah Ready Bush, who was appellant's neighbor in Austin during a 1986 marital separation.

del Angel testified that appellant loved her children and that the deceased and appellant behaved lovingly before the incident. When appellant's counsel asked whether appellant was capable of "doing something that would result in that," the trial court sustained the State's objection that it called for speculation, and the witness did not answer.

At the close of Sanchez's testimony, appellant made a bill of exception, asking her, "... [F]rom knowing Bill Mowbray, is it your opinion that he was capable of committing suicide on September 15, 1987?" and, "From your knowledge of Susie Mowbray, is it your opinion that she would be capable of killing Bill Mowbray on September 15, 1987?" Appellant's counsel requested admission of the testimony under Rules 404 and 405, and the Court sustained the objection "on the lack of basis for that testimony." Appellant's counsel did not attempt to question Bush on these matters during her testimony, which was taken just after Sanchez's.

During Fruia's testimony, appellant's counsel asked whether Fruia had been asked if he believed the deceased had killed himself. The prosecution objected and said, "I think there are motions on those questions. It's a clear violation of the Court's order." The trial court said, "Sustained," and the defense counsel asked Fruia whether he knew appellant and found her to be a warm and caring person. Again, the prosecution objected, stating, "It's a violation of the Court's order." After a bench conference, the trial court sustained the objection and instructed the jury to disregard the testimony.

Our search of the record did not reveal any written motion or order, although it seems to have been understood. The briefs on appeal indicate a motion in limine. Later that day, appellant's attorney asked to make a bill on the three questions, and the Court ascertained that the State objected to all three. The State did not object to questions on appellant's reputation as a peaceable and law-abiding person. The trial court ruled that error would be preserved by stating what the witnesses would say now and putting them on, live, at a later time. A prosecutor said, "Even while the jury is deliberating or something." The trial court said it ruled to sustain the State's objection on the ground of relevancy, and affirmed that the testimony offered later on the bill would be treated as if it were offered at this point. Appellant's counsel was told to list the reputation witnesses. The trial court stated that it would allow a bill of testimony of the five witnesses, "but you're going to have to bring those witnesses back and put them on and make sure that's what they testify to."

In a volume (XXII) titled "Perfection of Appellant's Bill of Exception," appellant called Wade Burnett and Sarah Bush, who answered the three questions. Appellant's counsel then stated that Sanchez, del Angel, and Fruia would have given the same responses. The bill was made after the guilty verdict was returned. Normally, a bill must be made before the jury is charged, Tex.R.App.P. 52(b), but the State and trial court apparently were willing to waive that requirement.

■ A trial court's refusal to admit evidence is reversible only if the evidence is relevant and its exclusion harmed the accused. *Canto–Deport v. State,* 751 S.W.2d 698, 700 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *see Bird v. State,* 692 S.W.2d 65, 73 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). In determining whether a trial court's refusal to admit evidence is reversible, we consider the facts and circumstances of each case. *Canto–Deport,* 751 S.W.2d at 700.

The test for harm when evidence is improperly excluded is whether there is a reasonable probability that the absence of that evidence contributed to the conviction or punishment. *Canto–Deport*, 751 S.W.2d at 700; *see Alexander v. State*, 740 S.W.2d 749, 765 (Tex.Crim.App.1987). It is within the trial court's discretion to refuse to allow cumulative testimony. *Blalock v. State*, 728 S.W.2d 135, 137 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). If the import of excluded evidence is conveyed to the trier of fact through other evidence, no error is shown. *See Easterling v. State*, 710 S.W.2d 569, 574 (Tex.Crim.App.1986); *Roberts v. State*, 743 S.W.2d 708, 711 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd).

No witness is competent to voice an opinion on guilt or innocence. *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim.App.1974); *Taylor v. State*, 774 S.W.2d 31, 34 (Tex.App.—Houston [14th Dist.] 1989, no pet.). Opinions of non-expert witnesses are not admissible if they are legal conclusions, or if they amount to little more than the witness' choosing sides on the case outcome. *Gross v. State*, 730 S.W.2d 104, 106 (Tex.App.—Texarkana 1987, no pet.) A witness is not allowed to give an opinion on an ultimate fact, as the jury is to determine questions of fact from all of the evidence and circumstances. *Rodriguez v. State*, 697 S.W.2d 463, 468 (Tex.App.—San Antonio 1985, no pet.); *see Klein v. State*, 662 S.W.2d 166, 168 (Tex. App.—Corpus Christi 1983, no pet.).

Evidence of a person's character is generally not admissible to prove he acted in conformity with it. *Carrasquillo v. State*, 742 S.W.2d 104, 110 (Tex.App.—Fort Worth 1987, no pet.); Tex.R.Crim.Evid. 404(a). Tex.R.Crim.Evid. 404(a)(1) makes the exception, "Character of accused. Evidence of a *pertinent trait* of his character offered by an accused, or by the prosecution to rebut the same." (emphasis added). A pertinent trait is "one that relates to a trait involved in the offense charged or a defense raised." *Spector v. State*, 746 S.W.2d 946, 950 (Tex.App.—Austin 1988, pet. ref'd). Whether appellant was a warm and caring person does not relate to the elements of the offense charged or a defense raised. *See Spector*, 746 S.W.2d at 950. Testimony that she was warm and caring would not be probative of any issue in the case and its exclusion could not harm appellant.

Under Tex.R.Crim.Evid. 405, a witness is competent to testify about an accused's character trait only if the witness is substantially familiar with the accused's reputation. *See Fearance v. State*, 771 S.W.2d 486, 511–512 (Tex.Crim.App.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

Points seven through nine concern the excluded testimony of del Angel. She was asked only whether appellant was capable of killing the deceased. Although appellant could have called her on her bill, she did not. Given the trial court's instructions that live testimony would be required on the bill, error was not preserved on the other two questions. *See Guerra v. State*, 760 S.W.2d 681, 694 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Rumph v. State*, 687 S.W.2d 489, 492 (Tex.App.—Houston [14th Dist.] 1985, no pet.). The question of whether appellant could kill the deceased was an ultimate question and improper; moreover, she was not asked if she knew appellant's reputation. The question on whether she was a warm and caring person would have been cumulative of her other testimony.

Points ten through twelve concern the excluded testimony of Judy Sanchez. Since she was not called live to answer whether appellant was a warm and caring person, that point, twelve, is not preserved. Since Sanchez was not asked whether she was familiar with appellant's reputation, the predicate for her testimony about whether appellant could kill was not met. Finally, Sanchez testified at length about the deceased's prior attempt to kill himself by shooting. Her testimony that the deceased was capable of suicide would have been cumulative of her testimony, unless the incident was too remote. Moreover, the testimony on the ultimate fact questions would have been improper.

Points thirteen through fifteen concern the excluded testimony of Bush, and points sixteen through eighteen concerned the excluded testimony of Wade Burnett. Bush and Burnett answered the questions live on the bill of exception. Whether appellant was a warm and caring person is not relevant, and the other two questions were improper because they went to ultimate issues. Bush and Burnett were not shown to have any knowledge of appellant's reputation, and Bush did not live in her community. Moreover, all of this testimony was cumulative of other testimony.

Points nineteen through twenty-one concern Fruia's excluded testimony. Since he did not testify at the bill of exception, only error about the question he was asked at trial, whether appellant was a warm and caring person, is preserved. This question was not relevant to the issues and is cumulative of other testimony. We overrule points seven through twenty-one.

Appellant's point twenty-four argues that the trial court erred in denying her motion for a new trial, which alleged that the State failed to produce the T-shirt the deceased wore when shot. Appellant argues that the State improperly suppressed the T-shirt, which would have exculpated appellant or mitigated the circumstances.

At trial, Dr. Dahm, who performed the autopsy, testified that there were remnants of a T-shirt with the body on the cart. When asked if EMS personnel had torn it, he said he knew from observation that "when they work very fast they will either cut or tear clothes off the body in order to save the individual." He believed he had returned the T-shirt to the police.

Also at trial, blood-spatter expert Tom Bevel examined photos of the deceased showing the T-shirt and marked another T-shirt to show the bloodstains. After putting the marked T-shirt on a dummy, Bevel positioned the dummy and the gun, assuming the deceased held it, and explained where the spatter would be found. Bevel testified that high-velocity staining would not occur on the shoulder if the top sheet completely covered the shoulder. When asked whether the actual T-shirt could have

assisted his analysis, he replied it could have.

At the motion for new trial, appellant's counsel conceded that it had no new evidence of prosecutorial misconduct concerning the missing T-shirt.

■■■ What evidence the State possesses is discoverable is within the trial court's discretion. *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121, *reh'g denied,* 449 U.S. 1027, 101 S.Ct. 600, 66 L.Ed.2d 490 (1980); Tex. Code Crim.Proc.Ann. art. 39.14 (Vernon 1979). The prosecution has a duty to reveal evidence in its possession which is favorable to the accused and material to either guilt or punishment. *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). However, *United States v. Bagley,* 473 U.S. 667, 675–76, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985), reiterates that a prosecutor does not violate his constitutional duty of disclosure unless the omission is of such significance that the accused is denied the right to a fair trial.

■■ The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *Agurs,* 427 U.S. at 109–110, 96 S.Ct. at 2400–2401; *Quinones,* 592 S.W.2d at 940. In determining materiality, we evaluate the undisclosed evidence in the context of the entire record, and error is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist. *Quinones,* 592 S.W.2d at 941.

■■ There was no proof that the T-shirt stains were high velocity. They could have been caused by drainage from the wound or from lifesaving efforts, consistently with evidence and with the State's theory. Moreover, had the stains on the shirt been high-velocity, it would only have shown that the deceased's shoulder was not as well covered as the EMS technicians be-

lieved, or that someone had pulled up the sheet before they arrived. (The height of the top sheet would clearly be a peripheral circumstance.) It would not have explained the deceased's clean right hand and arm, the gunshot residue on the lower right sleeve of appellant's nightgown, or the stain and spatter on her gown. We overrule point twenty-four.

By point twenty-five, appellant contends that she did not receive the effective assistance of counsel guaranteed by the Sixth Amendment to the U.S. Constitution, Article I, § 10 of the Texas Constitution, and Tex.Code Crim.Proc.Ann. art. 1.05 (Vernon 1977). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). To obtain a reversal based on ineffective assistance of counsel, a defendant must show reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986); *Ex parte Guzmon,* 730 S.W.2d 724, 733 (Tex. Crim.App.1987). We judge the adequacy of assistance of counsel by the totality of the representation rather than by counsel's isolated acts or omissions. *Id.*

Appellant alleges the following errors of counsel: failure to reurge a motion for change of venue, failure to preserve *Batson* error, failure to require a voluntariness hearing before admission of appellant's taped statement, failure to object to the admission of the gun, State's Exhibit 1, and the nightgown, State's Exhibit 36, failure to elicit certain testimony from Dr. Reifslager, and failure to object to a portion of jury argument.

Appellant's contention that the failure to reurge the motion for change of venue prejudiced her defense has no support in the record. Appellant points out that only five of seventy veniremembers raised their hands when asked if they had not heard about the case. However, nothing shows that the degree of awareness prevented her from selecting an impartial jury. The trial court specifically asked the panel whether anyone had formed a conclusion on appellant's guilt or innocence. Appellant has not shown that anyone who had formed a conclusion was selected as a juror or that any juror failed to render a verdict based solely on the evidence and the court's charge.

Appellant argues that counsel failed to preserve *Batson* error. *See Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). To establish *Batson* error, appellant would have had to first show that she was a member of a cognizable racial group, that the prosecutor used challenges to remove members of her race, and that circumstances raised an inference that the strikes were racially motivated. *Henry v. State,* 729 S.W.2d 732, 734 (Tex.Crim.App.1987). She would then have to challenge any neutral explanation the State advanced for each particular strike. *See Henry. Id.*

On appeal, appellant cites the failure of counsel to object to five strikes being used against Anglo women. Even if gender were included in *Batson,* appellant can hardly complain when eight of the twelve actual jurors were women. Concerning her objections to the strikes against Anglos, ironically, at *voir dire* appellant contended that the State used strikes to eliminate "members of the Mexican American race." The record does not show any error to be preserved. Appellant has not shown a racially discriminatory pattern in the strikes, that there was no race-neutral explanation for the strikes, or that racial prejudice tainted the jury's decision.

Likewise, counsel's failure to require a *Jackson v. Denno* hearing before appellant's taped interview was admitted into evidence was hardly counsel error. The circumstances surrounding the making of the tape were brought out at trial, and nothing suggested that the statement was not voluntary. Moreover, the tape was part of appellant's defense, as appellant's

counsel, in closing argument, urged the jury to rely on it, arguing that the evidence was consistent with the story told on the tape.

Appellant has not shown that a *Jackson v. Denno* hearing would have resulted in the suppression of the tape. Likewise, she fails to show how objections to the gun and to the nightgown would have rendered them inadmissible. While she claims testimony in the record shows they were seized without consent, the testimony does not address consent or show a situation inconsistent with consent. Such allegations are insufficient to show ineffective assistance of counsel. *See Barrera v. State,* 664 S.W.2d 372, 375 (Tex.App.—Corpus Christi 1983, no pet.). It is appellant's burden to present a record substantiating her claims. Tex.R.App.P. 50(d).

■ Appellant claims counsel demonstrated ineffectiveness by failing to elicit Dr. Reifslager's opinion on whether the deceased committed suicide. Reifslager testified that the deceased had suicidal tendencies in 1985. Thereafter, the State asked Reifslager, "If a pathologist came in and gave his expert opinion that Mr. Mowbray did not commit suicide, that he was murdered, you wouldn't have any quarrel with that, would you?" The trial court interrupted the answer, and appellant's counsel objected, "That is an unfair question to ask him. He says he doesn't know any of the particulars." Appellant argues that counsel did not adequately pursue Reifslager's opinion, now that the door was open, on whether the deceased could kill himself. However, on redirect, appellant's counsel gave a hypothetical based on pressures the deceased had been under and elicited the testimony that he would continue to be suicidal. Thus, Reifslager's position was clear. Appellant has not shown Reifslager qualified to answer whether the death was in fact a suicide. Appellant has not shown that Reifslager could give testimony on this question or that such testimony could have undermined the physical evidence to the contrary.

■ Finally, appellant claims that counsel was ineffective in failing to object to allegedly impermissible jury argument. Appellant claims the State misstated the evidence when it argued, "Remember what Luke tells Susie? 'The only way I will stay is if Bill kills himself.' ... What just happens happened. Bill's dead. He was telling that to Susie. Susie didn't want Luke to leave...." Appellant points out that the evidence showed that Luke told his new employer, not Susie (appellant), that he would stay if Bill killed himself. Appellant also claims that counsel's failure to object to the arguments discussed in points two and three contributed to the prejudice of her case by counsel error.

■ To obtain reversal for improper jury argument, an appellant must show, in light of the record as a whole, that the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts, harmful to the accused, into the proceeding. *Allridge v. State,* 762 S.W.2d 146, 155 (Tex.Crim.App.1988), *stay denied,* — U.S. ——, 109 S.Ct. 835, 102 L.Ed.2d 968 *cert. denied,* — U.S. ——, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Crim.App. 1980); *Brown v. State,* 718 S.W.2d 878, 879 (Tex.App.—Corpus Christi 1986, no pet.). Appellant has not shown that the prosecutor's misstatement probably affected the outcome of the proceeding. We determined in our discussions of points two and three that the other two arguments were invited, so objections should not have been sustained, had they been made.

Given the length and complexity of the trial, the acts and omissions of which appellant complains are either isolated or explainable as strategic decisions of counsel. In light of the whole record we cannot say that, had counsel performed differently, the outcome, in reasonable probability, would have been different. We overrule point twenty-five.

■ Appellant's last point complains that she did not receive effective notice that the State would seek a finding that she had used a deadly weapon to commit the offense. Because of lack of notice, she

argues, the punishment phase special issue, submitted over her objection, was error.

Although appellant may not have realized that the State would seek an affirmative finding, she was put on notice through the indictment that a special issue might be submitted to the factfinder. The indictment alleged that appellant caused the death of another person by shooting him with a handgun.

■■■ Any averment that a named weapon or instrument caused a death necessarily includes the allegation that the named instrument was used as a deadly weapon. *See Ex parte Beck,* 769 S.W.2d 525, 526 (Tex.Crim.App.1989); *McLean v. State,* 787 S.W.2d 196 (Tex.App.—Corpus Christi 1990). A "deadly weapon" includes a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. Tex.Penal Code Ann. § 1.07(11)(A) (Vernon 1974). A "handgun" is a firearm. *Barnes v. State,* 714 S.W.2d 89, 90 (Tex.App.—San Antonio 1986, no pet.). We overrule point twenty six.

We affirm the trial court's judgment.