**Roy Earl MOSLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 159–83 to 161–83.**

Court of Criminal Appeals of Texas, En Banc.

March 6, 1985.

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Kathi Alyce Drew, A.W. Arnold and Kevin Byrne, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted by a jury in a consolidated trial, of committing three separate aggravated robbery offenses. The jury assessed punishment in one case, at confinement for life, and in each of the others, at confinement for fifty years. The convictions were affirmed in an unpublished opinion of the Dallas court of appeals, delivered February 15, 1983.

We granted appellant's petition for discretionary review to determine whether the court of appeals was correct in rejecting appellant's contentions that the trial court erred in overruling his objection to the court's charge, and in overruling his objection to the prosecutor's argument at the punishment phase of the trial.

Appellant contends that the trial court erred in overruling his request that a definition of the statutorily defined term, "bodily injury" be included in the charge to the jury at the guilt/innocence phase of the trial. We look to the facts of the case in deciding this contention.

The record shows that appellant committed three separate robberies. On January 8, 1980, appellant walked into the Apothecary Pharmacy in Dallas, pointed a gun at the pharmacist, and handed him a note that said, "Put all your Preludin and Dilaudid in a sack or I'll kill you. Hurry 5 seconds." Another man accompanied appellant into the pharmacy. The pharmacist said that he was not sure whether appellant handed him a sack in which to place the drugs, or whether he put the drugs into a pharmacy sack. Several witnesses testified that they saw appellant walk out of the pharmacy carrying a brown paper sack.

Austin Wade, a taxi cab driver, testified that at 2:00 a.m. on January 12, 1980, he was driving a mother and her young son home from the grocery store when he got a call to pick up another fare. Wade picked up appellant and another man. Appellant directed him to a Cadillac that was parked on the street. Wade stopped next to the car. Appellant pointed a gun at him and said, "Give me your money." As Wade reached into his pocket to get his money, appellant said, "Don't make me kill you." At that moment, the woman dashed out the front door of the cab and Wade reached to grab the gun from appellant. Appellant then hit the child, who had been asleep in the cab, in the mouth with the gun. The gun went off and shot a hole in the door. Appellant walked away from the car and Wade walked around behind the car. Appellant fired a shot at Wade just as Wade turned in response to the woman's yell. The bullet went through the back of Wade's coat, missing him.

The third robbery about which the jury heard, involved another pharmacy. Marvin Thompson, a pharmacist at Medicare Pharmacy, testified that on January 12, 1980, appellant and another man walked into the store, that appellant approached him, pointed a gun at him, handed him a note, and

said, "Do what it says." The note read, "Give me all the Preludin and Dilaudid are (sic) I'll kill you. You got five seconds." Appellant gave Thompson a brown sack in which to put the drugs.

Roger Smith, a handwriting examiner for the Dallas County Institute of Forensic Science, testified that the handwriting on the two notes that appellant handed the pharmacists was the same as that on a jail information sheet filled out by appellant.

Each of the three indictments charged that appellant did "... by using and exhibiting a deadly weapon, to-wit: a handgun, knowingly and intentionally threaten and place the said complainant in fear of imminent bodily injury, ..." See V.T.C.A. Penal Code, Sec. 29.02(a)(2) & 29.03(a)(2). Appellant objected to the failure of the charge to include a legal definition of "bodily injury." He contends that because the term is specifically defined by statute,[1] the court erred in refusing to define it in the charge.

■ The rule seems to be that if a word, term, or phrase has not been statutorily defined at the time of trial, the court's charge need not include a definition of the word, term, or phrase. *Andrews v. State*, 652 S.W.2d · 370, 375 (Tex.Cr.App.1983). Assuming, arguendo, that the converse is also true—that a word, term, or phrase pertinent to the offense, that is statutorily defined, should be defined in the charge, omission of such definition must still be examined in light of the entire record of the case to determine whether the accused has been harmed by the omission.

■ Threatening and placing the complainant in fear of imminent bodily injury is one of the elements of robbery with which appellant was charged. See V.T.C.A. Penal Code, Sec. 29.02(a)(2). Because the term "bodily injury" is part of an element of the offense, and because the term is specifically defined by statute, the trial court should have included the definition in the charge. Assuming therefore, that it was error for the court not to include the definition, we must determine whether the omission of the definition was harmful error—whether it was calculated to injure the rights of appellant, whether there was *some* harm to appellant from the error. *Almanza v. State*, 686 S.W.2d 157 (delivered February 27, 1985).

■ The evidence that appellant pointed a gun at each of the three complainants is undisputed. All of the complainants testified that they were in fear of imminent bodily injury when appellant pointed the gun at them. None of the complainants were physically injured. Given this testimony, we do not believe the jury was misled by the omission of a definition of "bodily injury." No issue was presented by the evidence or the arguments to suggest either that bodily injury was in dispute or that there was confusion about what was meant by the term.[2] Appellant does not state how he was harmed by the omission, and we cannot determine any way in which he was harmed. In light of the record in this case we find the error to have been harmless.

Appellant contends that the trial court erred in overruling his objection to the prosecutor's argument at the punishment phase of the trial. Appellant argues that the prosecutor created witnesses and then complained of the failure of the accused to present them as witnesses.

■ At the punishment phase the prosecutor and defendant may call witnesses to testify to a defendant's general reputation. Art. 37.07, Sec. 3(a), V.A.C.C.P. The prose-

1. V.T.C.A. Penal Code, Sec. 1.07(a)(7) defines "bodily injury" as "physical pain, illness, or any impairment of physical condition."

2. While "bodily injury" is specifically defined by statute, we note that it is not a complex or unusual term, and the legal definition is much like the common meaning of the word. Taking this into consideration, along with the facts, we do not believe appellant was harmed by the error.

cutor may comment on the failure of the defendant to call to attest to his reputation any witnesses at all or some particular known witness who is competent to give material testimony on the matter. *McKenzie v. State*, 617 S.W.2d 211, 220 (Tex.Cr. App.1981). A prosecutor may not create witnesses and comment or speculate about what they would say. *McKenzie*, supra.

At the punishment phase, the State called three witnesses who testified that appellant's reputation for being peaceful and law abiding was bad. Appellant did not call any witnesses, but he did testify that he had never before been convicted of a felony. He admitted that he had been convicted of two misdemeanors, theft and unlawfully carrying a weapon.

■ Alleged argument error must be viewed in the context of the entire argument, keeping in mind the evidence presented. Bearing that in mind we turn to the complained of argument.

[PROSECUTOR] What I found interesting, very interesting, was when those witnesses told you his reputation was bad, no questions. It is uncontradicted that this man's reputation in the community out there for being peaceful and law abiding is bad and what I find very interesting and what you should then consider is you haven't heard one good thing about this man. Think about it. No one, not a mother, not father, not brother, not sister—

[DEFENSE COUNSEL] Judge, we object to this argument, he is creating witnesses and then complaining about them not being present.

[COURT] I will overrule the objection.

[PROSECUTOR] No one can tell you anything good about him, can they?

[DEFENSE COUNSEL] Judge, I object to that, that is outside the record as to whether anyone could or couldn't.

[COURT] I will sustain the objection as to the way it is phrased. Ladies and gentlemen, the lawyers are entitled to make reasonable deductions and logical inferences from the evidence as long as they label them as such.

[DEFENSE COUNSEL] I ask that the jury be instructed to disregard it.

[COURT] The jury will be instructed to disregard the last statement made by Mr. Byrne.

[DEFENSE COUNSEL] Move for mistrial.

[COURT] Overruled your motion for mistrial.

[PROSECUTOR] As you heard on voir dire, there is equal subpoena power. We are here on the most important day of his life and it is a reasonable deduction from the evidence that if there was one person that could say anything good about him, you would hear it, that could tell you about the way he has lived his life—

. . . .

If his reputation was good, he could bring his witnesses that would say, "he's good, his reputation out there is good, he's a good person in the community, I know good things about him and I can tell you he ought to be back out there."

■ At first blush the underscored portion of the argument seems to violate the rule explained in *McKenzie*, supra. However, every alleged error must be viewed in the context of the entire argument. Few, if any, arguments standing alone, call for automatic reversal. In *McKenzie* the prosecutor named specific witnesses as if they actually existed, and he speculated about what he thought those witnesses would say. The tone of the entire argument presented the impression that the particular witnesses actually existed. The argument in the instant case is very close to that in *McKenzie* simply because the prosecutor lists some relatives appellant might call. However, it does not quite cross the line to improper argument because of the context within which it was said. When read with the rest of the pertinent comments, it is evident that the prosecutor was

not saying these particular witnesses existed. Rather, he was emphasizing that appellant called no one, not even anyone close to him who might be expected to testify in his behalf. The inference was not that these people actually existed, but that appellant did not call anyone at all to testify in his behalf.

The instant case is further distinguishable from *McKenzie* because in *McKenzie* the prosecutor detailed what the witnesses might say. In the instant case the prosecutor said only that no one was called to testify that appellant was good, that his reputation was good—general information that was admissible and would be expected of reputation witnesses.

Viewed literally and in isolation, the argument leads to the inference that the prosecutor was naming witnesses, as if they existed, whom appellant did not call. Viewed rhetorically and in the context of the rest of the argument and evidence presented, the more likely inference is that the prosecutor was emphasizing that appellant did not get anyone at all to testify in his behalf to say that his reputation was good in contrast to the State's witnesses.

While this argument presents a very close question as to its propriety, we hold that in the context in which it was said, it is not improper.[3]

The judgments of the court of appeals are affirmed.

CLINTON, TEAGUE and MILLER, JJ., dissent to the disposition of appellant's second ground of error.

---

**3.** Compare *King v. State,* 614 S.W.2d 165 (Tex. Cr.App.1981).