**Michael Dwayne FARRIS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–87–252–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 26, 1988.

---

2. See footnote 1, *supra.*

Glen E. Eakman, Fort Worth, for appellant.

Richard L. Hattox, Dist. Atty., Granbury, for the State.

Before FENDER, C.J., and
KELTNER and LATTIMORE, JJ.

## OPINION

KELTNER, Justice.

Michael Dwayne Farris appeals from his conviction by a jury for the offense of aggravated possession of amphetamine, a controlled substance, of more than 400 grams, pursuant to TEX.REV.CIV.STAT. ANN. art. 4476–15, secs. 4.02(c)(3) and 4.041(a), (c) (Vernon Supp.1988). The jury assessed punishment at fifty years confinement in the Texas Department of Corrections and a $20,000 fine pursuant to TEX. REV.CIV.STAT.ANN. art. 4476–15, sec. 4.041(d)(2) (Vernon Supp.1988).

Farris brings two points of error, attacking the sufficiency of the evidence and contending the trial court erred in charging the jury. We disagree with Farris' contentions and affirm the conviction.

On April 24, 1987, after several hours of surveillance, a team of peace officers executed a search warrant at Farris' home in Hood County. The officers seized various materials used in manufacturing amphetamine and three substances containing amphetamine.

In his first point of error Farris argues the evidence is insufficient to support his conviction because there was variance between the allegations in the indictment and the proof presented at trial. Specifically, Farris contends that the indictment alleged possession of 400 grams of amphetamine. At trial the State proved that he possessed more than 400 grams of amphetamine, including adulterants and dilutants.

At trial the State produced evidence that the police officers seized drug manufacturing paraphernalia and amphetamine. Joel Budge, a chemist for the Department of Public Safety, testified as to the weight and chemical composition of the three substances. Budge testified State's Exhibit One was a powder substance weighing 280.76 grams. State's Exhibits Two and Three were liquid substances weighing 422.49 grams and 213.58 grams, respectively. Budge testified all three substances contained amphetamine, but the exact percentage was determined for only one of those substances. Budge performed a purity test on the powder and determined the substance was 79% pure amphetamine, an amount approximately equal to 221.80 grams pure amphetamine. The aggregate weight of the substances equalled 916.83 grams of amphetamine, including adulterants and dilutants.

The statute proscribing possession of a controlled substance provides:

(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally possesses a controlled substance in Penalty Group 2....

....

(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) of this section and the amount of the controlled substance possessed is, *by aggregate weight, including any adulterants or dilutants,* 28 grams or more.

(d) An offense under Subsection (c) of this section is:

....

(2) punishable by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000, if the amount of the controlled substance possessed is, *by aggregate weight, including any adulterants or dilutants,* 400 grams or more.

TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.041(a), (c), and (d)(2) (Vernon Supp. 1988) (emphasis added).

Amphetamine is a controlled substance listed specifically in penalty group two. The statute provides in pertinent part:

(3) Unless specifically excepted or unless listed in another Penalty Group, any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a depressant or stimulant effect on the central nervous system:

Amphetamine, its salts, optical isomers, and salts of optical isomers.

*See* TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.02(c)(3) (Vernon Supp.1988).

The Court of Criminal Appeals recently addressed a case with similar, but distinguishable facts. *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Crim.App.1988). McGlothlin was charged with possession of more than 400 grams of amphetamine, including adulterants and dilutants. The sole question in that case was the meaning of adulterants and dilutants. *Id.* at 857. More specifically, the question was whether a water solution used in manufacturing amphetamine was an adulterant or dilutant. The court held it was not. *Id.* at 861.

In the instant case, the chemist testified the liquid substances consisted solely of amphetamine with adulterants and dilutants. Further, on appeal, Farris does not contend the solutions consisted of anything other than amphetamine, plus adulterants and dilutants.

■ The definition of adulterant and dilutant is not the issue before this court in the instant case. The issue before us is whether the language in the indictment, charging Farris with possession of more than 400 grams, includes "adulterants and dilutants." We find that it does.

The plain reading of the statute provides, in calculating the weight of the controlled substance for the purpose of determining whether the offense is aggravated, the aggregate weight includes any adulterants or dilutants.

The State charged in the indictment that the controlled substance, amphetamine, was more than 400 grams. The Controlled

Substances Act defines a controlled substance as "a drug, substance, or immediate precursor listed in Schedules I through V or Penalty Groups 1 through 4 of this Act." TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 1.02(4) (Vernon Supp.1988). As discussed previously, the term is further defined to include any adulterants or dilutants in section 4.041.

Additionally, the *McGlothlin* court discussed the fact that punishment for possession of a controlled substance is assessed according to penalty group. *McGlothlin*, 748 S.W.2d at 860–61. As noted previously, amphetamine is a penalty group two controlled substance. Penalty group two, subsection three, covering amphetamine provides:

> [A]ny material, compound, mixture, or preparation which contains *any quantity* of the following substances ...
>
> Amphetamine, its salts, optical isomers, and salts of optical isomers.

TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.02(c)(3) (Vernon Supp.1988) (emphasis added).

Based on a plain reading of the statutory definitions, we hold, in an indictment for aggravated possession of a controlled substance pursuant to section 4.041, the use of the term "controlled substance" includes adulterants and dilutants. As a result, there is no variance between the allegations in the indictment and the proof presented.

Our analysis in the instant case is identical to our analysis in a recent decision by this court. *See Reeves v. State*, 743 S.W.2d 362 (Tex.App.—Fort Worth 1987, pet. pending). In *Reeves*, an aggravated delivery of amphetamine case, we held the use of the term "controlled substances" in an indictment included adulterants and dilutants. *Id.* at 363.

In *Reeves*, as in the instant case, the appellant relied on the case of *Cruse v. State*, 722 S.W.2d 778 (Tex.App.—Beaumont 1986, pet. ref'd). In *Cruse*, the State alleged in the indictment that the controlled substance weighed more than 28 grams. The qualifying phrase "including any adulterants or dilutants" was not used in the indictment. The Beaumont court held in effect, where the State did not specify that adulterants and dilutants were to be used in the calculation, the State had to prove the amount excluding adulterants and dilutants. *Id.* at 780.

■ We respectfully disagree with the reasoning of the court in *Cruse*. The use of the phrase "including any adulterants or dilutants" in the indictment is not necessary because it is apparent from section 4.041(c) and (d) of article 4476–15 that the term "controlled substance," as used in the context of that section, includes adulterants and dilutants. Therefore, in the context of section 4.041, the State in effect alleged that Farris possessed more than 400 grams of amphetamine, including adulterants and dilutants. The State proved those facts. We hold the evidence is sufficient to support Farris' conviction. As a result, we overrule Farris' first point of error.

In his second point of error Farris contends the trial court erred in charging the jury that the term "controlled substance" includes "any adulterants or dilutants." Specifically, Farris contends since the qualifying phrase was not included in the indictment, it was error to include the phrase in the definition section of the charge. Farris asserts that including the phrase in the charge allowed the jury to consider a different theory for conviction. *See Williams v. State*, 612 S.W.2d 934, 935 (Tex.Crim. App. [Panel Op.] 1981). We disagree with Farris' assertions.

Farris objected to defining "controlled substance" in the charge as including adulterants and dilutants, but the trial court overruled his objection.

Article 3.01 of the Code of Criminal Procedure provides:

> All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined.

TEX.CODE CRIM.PROC.ANN. art. 3.01 (Vernon 1977).

■ The term "controlled substance" is defined generally in the Controlled Sub-

stances Act, article 4476–15, section 1.02(4) and is defined more specifically in section 4.041 to include "any adulterants or dilutants." The general rule is if a word, term, or phrase has not been statutorily defined, the court's charge does not have to include a definition of the word, term, or phrase. *Mosley v. State*, 686 S.W.2d 180, 182 (Tex. Crim.App.1985).

It follows that the converse is also true. If a phrase has a statutory definition, then the definition should be included in the charge. *Id.*

■ Additionally, the Court of Criminal Appeals has held a charge will not be found fundamentally defective for including or omitting definitions in the abstract portion of the charge. *Hudson v. State*, 675 S.W. 2d 507, 512 (Tex.Crim.App.1984). Though Farris made an objection to the definition, requiring us to apply the harmless error analysis, we find in light of the entire record, Farris was not harmed by the definition. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g).

■ Based on our finding of harmless error and on our finding that "controlled substance" is "specially defined" by statute to include adulterants and dilutants, we find the trial court did not err when it included the phrase in the definition section of the charge. Accordingly, we overrule Farris' second point of error.

Having overruled both points of error, we affirm the judgment of the trial court.