**Mario MORA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–268–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1990.

Rehearing Overruled Sept. 27, 1990.

Homero C. Canales, Alice, for appellant.

Luis V. Saenz, County Crim. Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

A jury convicted appellant of the murder of his wife and assessed life imprisonment. Appellant raises seven points of error, claiming that a State's witness was an accomplice, that her testimony was not corroborated as required, that the evidence is legally and factually insufficient to support the verdict and conviction, and two instances of prosecutorial misconduct. We affirm the trial court's judgment.

By points one and two, appellant argues that Beatriz "Bebe" Garcia was an accomplice and that the trial court erred in submitting an accomplice instruction as a fact issue. The trial court included paragraphs in the charge which defined "accomplice" and instructed the jury that an accomplice's testimony must be corroborated before it could be relied on as evidence for conviction. The trial court did not require a separate finding on whether she was an accomplice. Since appellant did not object to the charge, he can obtain reversal on appeal only if the error is so egregious and created such harm that he did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Lewis v. State*, 771 S.W.2d 666, 668 (Tex.App.—Corpus Christi 1989, pet. ref'd).

An accomplice witness is someone who has participated with someone else before, during, or after the commission of a crime. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex.Crim.App.1986). If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law. A witness is not an accomplice merely because he or she knew of the crime but failed to disclose it or even participated in concealing it. *Beets v. State*, 767 S.W.2d 711, 724 (Tex.Crim.App.1987); *Kunkle*, 771 S.W.2d at 439; *Russell v. State*, 598 S.W.2d 238, 249 (Tex.Crim.App. 1980).

The trial court is not required to charge on an issue that is not raised by the evidence. *Banks v. State*, 624 S.W.2d 762, 765 (Tex.App.—Houston [14th Dist.] 1981), *rev'd on other grounds*, 656 S.W.2d 446 (Tex.Crim.App.1983). When the evidence clearly shows that a witness was *not* an accomplice, the trial court does not need to charge the jury either that the witness is an accomplice or that the jury must decide whether the witness is an accomplice. *Harris v. State*, 645 S.W.2d 447, 456 (Tex. Crim.App.1983).

On January 7, 1989, around 7 a.m., appellant reported his wife missing since the previous evening. Later that day, Mrs. Mora's body was found in the family jeep in an area of the beach called Outdoor Resorts. She had been shot in the head. Much of the evidence at trial concerned a marital crisis beginning in December, during which Mrs. Mora accused appellant of an affair with "Bebe" Garcia.

Ms. Garcia worked in the same office with appellant. She testified that they became romantically involved in December, during which time she was living at her parents' home rather than with her husband. At one point appellant said to her that he saw his wife no longer in the picture. Garcia understood this to mean that they would divorce. On December 28, he signed a check for $1,297 over to her and asked her to buy a .357 magnum automatic. She said she believed the appellant was helping her financially because she had mentioned difficulties. He told her he wanted the gun for shooting practice. On December 29, Ms. Garcia took $400, went into town with her mother, and attempted to buy the gun and bullets as instructed. She ended up buying a .38 Super and .38 Special bullets. The next day, a Friday, appellant picked up the gun at her house, then called later to say the bullets did not fit. He asked her to get the correct bullets, which she did. She next saw appellant at work on January 2.

On Friday, January 6, they had lunch together, and appellant asked her several times whether she would be home that night. He said he would call her. She stayed home, and he called between 12:15 and 12:40 a.m. "Bebe" Garcia testified to this conversation:

His first question was, "How are you doing?" I said, "Fine. Where are you at?" He says, "I'm at a pay phone." I said, "What about your wife?" He said, "Oh, she's with me," and he kind of laughed. I said, "Mario." He said, "No, I need a ride."

He said, "Pick me up at Outdoor Resorts."

Ms. Garcia testified that she drove to Outdoor Resorts, saw the jeep, and then saw appellant. He asked her to wait and got a purse and a blanket. She then knew something was wrong, and he said, "It had to be done." She testified that she began to shake and he tried to calm her, and he told her to go to deep water. She said she didn't question and drove him to water and he threw something into it, and then she drove him home. They talked on the phone several times thereafter.

Ms. Garcia testified that on the following Monday, she was called to the Sheriff's office for questioning. She denied her relationship with appellant because she knew it was wrong and she was embarrassed. She was also worried about having purchased the gun, which was registered to her. On Tuesday, however, she drew a map and gave a statement about the gun. Ms. Garcia testified she was not promised anything before giving the second statement and drawing the map. She also said she did not see what appellant threw into the water but assumed it was the gun.

Ms. Garcia testified that she was given total unconditional immunity and would never be prosecuted for murder. She said she was given it two or three days after her statements, but was deposed after that. She testified that she gave all the information about the gun without being promised anything. She, her attorney, and the prosecutor met later and he told her she would not be charged.

Investigator Ernesto Flores testified that he and another investigator recovered a .38 Super automatic from the water based on Garcia's map. He stated that Garcia did not ask for a lawyer and was promised nothing. She gave different versions of her story. She expressed embarrassment, would cry, and later would be calm.

Appellant took the stand and repeatedly denied having an affair with Ms. Garcia. He said he tried to quash the rumors at work, that Ms. Garcia's husband had made threats based on the rumors, that Ms. Garcia bought a gun to protect herself, and that he tried to load the gun for her but she had bought the wrong bullets, so he returned them. He characterized the money he gave her as a loan.

Having read the entire record, we are unable to find any evidence to show that Ms. Garcia knew or even suspected that appellant would kill his wife before it had been done. Even though she admitted she did not originally tell investigators the truth, nothing refutes her motives of embarrassment and fear of prosecution. No evidence suggests that she wanted to protect appellant, and even appellant's testimony portrays her as innocent. At most, she helped conceal the crime. The evidence is not sufficient to raise the issue of whether she was an accomplice. The trial court's instruction to the jury was more than what was required. We overrule points one and two.

By point three, appellant claims that Garcia's testimony was not sufficiently corroborated to support a conviction. Appellant assumes that Garcia was an accomplice. This was not so. The requirement of corroboration does not apply. This point is overruled.

■■■ Next, by points four and five, appellant claims that the evidence was legally and factually insufficient to support the conviction. When reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or the judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). Direct and circumstantial evidence are equally probative for proving guilt beyond a reasonable doubt. *Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Crim.App.1983). In a circumstantial evidence case, every fact need not point

directly and independently to the defendant's guilt; rather, the combined and cumulative force of all incriminating circumstances warrants the jury's conclusion. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Ramos v. State,* 767 S.W.2d 248, 249 (Tex.App.—Corpus Christi 1989, pet. ref'd). If, after viewing the evidence in the light most favorable to the verdict, there is no other outstanding reasonable hypothesis, we find that the evidence is sufficient to support the conviction. *Livingston,* 739 S.W.2d at 330.

Generally, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

Additional facts developed from the trial show that "Bebe" Garcia placed appellant at the scene of the crime on the night in question. She testified that he possessed the gun. Officers used Garcia's map to locate a gun that she thought the appellant had thrown from the jeep. The gun was of the same type that she said she had given him. Bullet casings in the jeep were the same type that the gun would use. A firearms examiner testified that he tested the cartridge cases found in the jeep and concluded they were fired from the recovered gun.

The State developed motive evidence. It showed that appellant applied to increase his wife's life insurance just before her death, on December 2.

Evidence showed appellant's attitude toward his wife. His supervisor testified that appellant had commented to her that he drove by an accident scene and wished it was his wife, then said, "Well, not really." Testimony showed that Mrs. Mora had confided in others that appellant had beat her, that she had resolved to divorce him, and that he used the children to prevent her from leaving him. Some evidence suggested that he had had numerous affairs, though he only admitted to having one during a marital separation. In December, Mrs. Mora told others that she had caught appellant with another woman in their living room in the middle of the night, and that this was a cause of a fight on December 21.

Mrs. Mora's sister Hilda, brother-in-law Kurt, and the neighbor, Trooper David, testified to a fight between the appellant and his deceased wife on December 21. Mrs. Mora called her sister from San Benito, where she had gotten a ride after appellant allegedly threw her out and locked the door. He had not even allowed her to get her purse, and had threatened to kill her if she came back. Mrs. Mora, Hilda, and Kurt (the brother-in-law) went to the apartment to get Mrs. Mora's things and the children. Appellant had threatened to hurt the children. He attacked Kurt when he demanded an answer about the children. Appellant had Kurt in a choke hold when David broke up the fight. Later Kurt was treated for a ruptured groin. Because the law could not force appellant to give her the children and because she was concerned for their welfare, she ultimately stayed with appellant.

Appellant denied any affairs except one during a separation. He denied that he threw his wife out in December, saying he gave her the option to leave. He said Mrs. Mora lied. He said he had only hit her on one occasion. Other testimony is summarized under point one.

Appellant testified that as a result of the rumors of his affair with Garcia, her husband Henry threatened to kill him or his family. His wife confronted Garcia, and Garcia told him her husband had threatened her. She bought a gun to protect herself. He testified that Garcia said Henry threatened to hurt appellant's family like appellant hurt Henry's family, to "take my wife and kids just like I took his wife and kids."

There was conflicting testimony about the milk in the refrigerator. This seemingly small detail turns out to be important as to the credibility of appellant's story about why his wife left alone the last time he claimed he saw her alive. Appellant testi-

fied that late on January 6, he and his wife went to the store. Upon returning to the apartment, Mrs. Mora said that she had forgotten to buy milk. He said they checked and they had a gallon container of milk which was virtually empty; the milk barely covered the bottom of the container. She decided to buy milk and left alone. About a quarter to 2:00, he was worried and asked a neighbor, Tony David, a DPS trooper, what to do. He waited all night for her on the couch, and reported her missing in the morning. He testified that he borrowed David's truck later that day to take the children to get pizza because they hadn't eaten all day. On cross examination, he said the children did not have breakfast, there was not enough milk, and his wife had left at 11:45.

Criminal investigator Ronnie Saenz testified that during a consent search of appellant's apartment that Saturday at about 10 p.m., he found a gallon container of milk, one-quarter full, in the refrigerator. He said appellant had told them that he and his wife had gone to buy milk but had bought soda and forgotten the milk. Appellant's brother-in-law also testified that appellant told him that he last saw his wife when she went for milk. One of the children testified that he ate cereal and milk on that particular Saturday morning. Anthony David testified that he went to appellant's apartment later that Saturday, observed milk in the apartment, and that the children had had cereal and milk for breakfast.

We have examined the whole record, and overrule points four and five.

■ By point six, appellant complains that it was prosecutorial misconduct, prejudicial error, and a denial of appellant's due process right to a fair trial when the State solicited testimony that appellant requested a lawyer and refused to make a voluntary statement when asked to take a polygraph.

On direct examination by his attorney, appellant volunteered that Lt. Gavito asked if he would take a polygraph test. He said "yes". Appellant's attorney then asked: "Did you refuse anything that they asked you?"; "Did the polygraph examiner ever show up?" Appellant answered both ques-

tions in the negative. Appellant's attorney did not object to the questioning about the polygraph or about the failure to make a written statement. Specifically, appellant complains of the State's question on cross-examination, "Isn't it true, Mr. Mora, that when they asked you to take a polygraph, you wanted a lawyer?" to which appellant responded, "No, sir."

■ Appellant cites cases that an individual's post-arrest silence may not be used against him. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Sanchez v. State*, 707 S.W.2d 575, 580 (Tex.Crim.App.1986); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex.Crim.App.1981). It is clearly permissible, however, to inquire into pre-arrest silence. *Jenkins v. Anderson*, 447 U.S. 231, 238–39, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980); *Waldo v. State*, 746 S.W.2d 750, 755 (Tex.Crim. App.1988).

Moreover, appellant gave the same answers that he had given on direct examination. When a defendant offers the same evidence, or if it comes in elsewhere without objection, he may not complain on appeal. *Stoker v. State*, 788 S.W.2d 1, 14 (Tex.Crim.App.1989); *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Crim.App.1981). We overrule point six.

■ By point seven, appellant contends that it was prosecutorial misconduct for the State to remind the jury that appellant presented no character witnesses except his mother. The State argued, "As a matter of fact, have you heard anyone come in and testify for this man that he has a good reputation, that he's truthful, that he's honest? Don't you think if there was someone, one person who could say that besides his mother, they would be here? Don't you think? Not one person. Not one person could say he has a good reputation or they would be here." The trial court sustained appellant's general objection and instructed the jury to disregard the remark. Appellant did not move for a mistrial.

■ Proper jury argument encompasses one of the following areas: summation of the evidence, reasonable deduction

from the evidence, answer to opposing counsel's argument, or plea for law enforcement. *Id.; Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988). The general rule is that to preserve error committed during jury argument the defendant must object until receiving an adverse ruling. *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim.App.1989). Generally, improper jury argument is reversible error only when it is so inflammatory that an instruction to disregard cannot cure its prejudicial effect. *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim.App.1985). The invited argument rule permits response to opposing counsel's argument, outside the record, except that the response may not exceed the scope of the invitation. *See Pyles v. State,* 755 S.W.2d 98, 116 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Mowbray v. State,* 788 S.W.2d 658, 664 (Tex.App.—Corpus Christi 1990, pet. filed).

To determine whether an improper argument is incurable error, we review the entire record to ascertain the probable effect of the argument on the minds of the jurors. *Crowe v. State,* 400 S.W.2d 766, 768 (Tex. Crim.App.1966); *Mowbray,* 788 S.W.2d at 664. We also examine the alleged error in context of the entire argument. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App. 1988); *Mowbray,* 788 S.W.2d at 664.

Appellant and "Bebe" Garcia's testimonies directly contradicted each other, particularly on the nature of their relationship, why Ms. Garcia bought the gun, whether appellant had the gun, and (crucially) whether appellant stayed at home or visited Outdoor Resorts on the night of the murder. Clearly, one of them was lying on each of those issues.

During closing argument, appellant's attorney stated that the case was about credibility and asked, "Are you going to believe an admitted perjuror, Beatriz Garcia?" He then cataloged Garcia's lies and alleged lies. Appellant's attorney then discussed evidence which it alleged the State could have presented, but did not, including a photo of the milk carton, casts of the tire tracks of the jeep, or sand on the jeep

showing it had been driven on another part of the beach. Toward the end of his presentation, he argued,

> She's not being honest with us. I don't know if we'll ever know or can give credence to her. Can you ever believe anything she's saying? How do you know which particular story that she's telling you is true? She's told so many different stories that you just can't put your faith in any of them. A girl that would lie under oath, that would lie to her boss, and would lie to the police.

The State responded with an argument demonstrating that if the jury chose to believe appellant over Ms. Garcia, they would have to believe not only that Ms. Garcia lied but that numerous other witnesses did also. Then the prosecutor pointed out the only testimony of Garcia's husband's alleged threats was from appellant, and asked rhetorically why, since the appellant could have subpoenaed witnesses also, he did not produce them. It was then that the State made the argument to which appellant objected.

The prosecutor's argument was an answer to appellant's arguments that he should win the credibility contest and that the State did not bring everything forward. Moreover, the prosecutor was not telling the jury that any particular witness existed who was not presented. In this way, the argument is similar to that in *Lewis v. State,* 693 S.W.2d 771, 774 (Tex.App.—Fort Worth 1985, no pet.), which was held not reversible error. *See Mosley v. State,* 686 S.W.2d 180, 184 (Tex.Crim.App.1985). We do not find the argument so prejudicial that the instruction could not cure any harm. We overrule point seven.

The trial court's judgment is AFFIRMED.

SEERDEN, J., concurs with written opinion.

SEERDEN, Justice, concurring.

I concur in the result reached by the majority opinion. I do not believe it is necessary, however, to determine as the majority does that the evidence is insuffi-

216

cient to raise an issue concerning Beatrice [Beatriz] Garcia's status as an accomplice witness.

As the majority notes, the trial court defined the term "accomplice" and instructed the jury on the law of accomplice corroboration. The majority does not note, however, that the court further instructed the jury that if it believed that Beatrice Garcia was an accomplice, then her testimony could not be used to convict appellant unless it first found independent evidence which tended to connect appellant with the commission of the offense.

In his first two points, appellant argues that Garcia was an accomplice as a matter of law and that the jury should have been so instructed. Appellant, however, did not object to the charge at trial but now claims that the trial court committed reversible error in failing to so instruct. Thus, to resolve appellant's points, we need not decide that there is no evidence to raise an issue, but only whether the trial court committed fundamental error in not charging the jury that Garza was an accomplice as a matter of law. *See Solis v. State,* 792 S.W.2d 95 (Tex.Crim.App.1990); *Burns v. State,* 703 S.W.2d 649 (Tex.Crim.App.1985).

Given the evidence, as set out in the majority opinion, and the fact that the jury was instructed on the law of accomplice corroboration, I would simply find that appellant did not suffer egregious harm as a result of the trial court's failure to instruct as appellant now argues. When the majority decides that the evidence does not even raise a fact issue, it decides an issue not presented and an issue beyond what we are required to address. I agree that appellant's first two points should be overruled.

Accordingly, I concur in the court's judgment.