Yan Renate McHENRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00834–CR.

Court of Appeals of Texas, Dallas.

Nov. 12, 1991.

Discretionary Review Refused April 1, 1992.

---

John D. Nation, Dallas, for appellant.

Patricia Poppoff Noble, Dallas, for appellee.

Before BAKER, THOMAS and WHITTINGTON, JJ.

## OPINION

BAKER, Justice.

The State indicted appellant for conspiracy to possess cocaine in an amount over 400 grams. A jury found appellant guilty. The jury assessed a ninety-nine year sentence and a $100,000 fine. Appellant contends the trial court erred when it: denied his *Batson* challenge to a peremptory strike by the State; admitted improper expert testimony; and allowed the State to make an improper jury argument during the punishment phase. Appellant also contends the evidence is insufficient to convict because of a fatal variance between the original indictment and the State's evidence at trial. We affirm the trial court's judgment.

## THE TEN–KILO REVERSE STING

Appellant met with two persons at a local restaurant to arrange the sale of ten kilograms of cocaine to appellant. Appellant wanted to buy ten kilograms of cocaine at $19,500 per kilo. When appellant negotiated with these two individuals, he was unaware they were informants, sent to the restaurant by a narcotics officer to set up a reverse sting.

One of the informants testified he discussed the particulars of the transaction with appellant. After this discussion, appellant's two confederates joined the two informants and appellant. The five went to a local motel to complete the buy.

Shortly after arriving at the motel, the undercover officer appeared with a one-kilogram sample of cocaine. All the parties met in one motel room where the officer produced the sample for inspection. The officer testified he negotiated with appellant and his two confederates. Appel-

lant stood next to the officer while the two confederates physically inspected the sample.

The officer demanded to see the money. One confederate told the officer the money was in another room at the hotel. He also told the officer he could see the money when he produced the other nine kilos of cocaine. The officer said it was in his car. Appellant left with the officer to get the rest of the cocaine.

At this point the officer arrested appellant. Other officers moved into the room and arrested appellant's confederates. The officer who acted as the seller found $206,-000 cash in a suitcase in the room where one of the confederates said it would be located.

Appellant testified on his own behalf. Appellant claimed he had planned to buy a transmission shop from one of the individuals who was in fact a police informant. He claimed that he was at the hotel to complete the transmission shop purchase. He said he kept the $206,000 cash in a suitcase because he did not believe in banking institutions.

## THE *BATSON* CHALLENGE

In his third point of error, appellant contends the State used a peremptory challenge to exclude a juror for racial reasons. After jury selection, appellant made a timely motion complaining of the State's use of a peremptory challenge to exclude a black juror. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See* TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). Appellant argues that the prosecutor struck this juror for racially motivated reasons. He contends the record shows disparate treatment of this juror by the State.

### A. Applicable Law

#### 1. Article 35.261—*Batson* Criteria

##### a. A Defendant's Burden

The law prohibits peremptory challenges based on race. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719; TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). A defendant must first establish a prima facie case that the State purposefully discriminated against a member of his own race in the exercise of its peremptory challenges. *Batson*, 476 U.S. at 93–94, 106 S.Ct. at 1721. To establish a prima facie case, a defendant must show that: (1) he is a member of a cognizable racial group; (2) the State executed a peremptory challenge to remove a prospective juror of the defendant's race; and (3) these facts and any other relevant circumstances raise an inference that the State used the peremptory challenge to exclude a juror based on race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722; *see also Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App. 1987); TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989).

Once a defendant establishes a prima facie case, the burden shifts to the State to come forward with a race-neutral explanation for challenging that particular juror. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). When the State presents race-neutral explanations for the exercise of peremptory challenges, a defendant may offer evidence showing the State's reasons are a mere sham or pretext. *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App. 1988). The burden of persuasion remains with a defendant to establish purposeful discrimination. *Williams v. State*, 804 S.W.2d 95, 97 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991).

#### 2. Standard of Review

When we review the trial court's findings on a *Batson* challenge, we follow the clearly erroneous standard. We review the entire record to analyze the trial court's decision. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1990) (op. on reh'g). A finding remains clearly erroneous, though evidence exists to support it, if our review of the entire record leaves us with the definite and firm conviction that the trial court committed a mistake. *Whitsey*, 796 S.W.2d at 721.

We examine the entire record in the light most favorable to the trial court's rulings.

*Williams,* 804 S.W.2d at 101. We determine whether the record supports the race-neutral reasons provided by the State or whether a defendant introduced enough evidence to establish, or rebut, that the State used a peremptory challenge in such a manner that this Court can rationally infer the State engaged in purposeful racial discrimination. *Williams,* 804 S.W.2d at 101. We test the trial court's findings about each minority person struck because *Batson* prohibits even one purely racially motivated strike. *Whitsey,* 796 S.W.2d at 727.

### B. Application of Law to Facts

■ Appellant challenges the State's peremptory strike of prospective juror number one, Bedford Wilhite. The prosecutor stated he peremptorily challenged this juror because of the juror's arrest for traffic tickets and because of his son's arrest for drug-related activity. Appellant contends the record shows the State treated Wilhite disparately.

Appellant contends the record shows the State did not strike: (1) two potential jurors who had personal arrest records; (2) four potential jurors who had family members with arrest records; and (3) three potential jurors who had family members or friends with arrest records for drug-related offenses. Appellant concludes that the record demonstrates the State did not strike several potential nonminority jurors with the same or similar characteristics as Wilhite. Appellant argues the record does not sustain the trial court's findings and that they are clearly erroneous.

■ The arrest of a prospective juror for an offense is an objective basis that would induce a prosecutor to exercise a peremptory challenge regardless of the ethnic background of the juror. *See Branch v. State,* 774 S.W.2d 781, 783 (Tex. App.—El Paso 1989, pet. ref'd); *Anderson v. State,* 758 S.W.2d 676, 680 (Tex.App.— Fort Worth 1988, pet. ref'd). It is also appropriate to use a peremptory challenge against a prospective juror with a relative who had problems with the law. *See Sims v. State,* 768 S.W.2d 863, 865 (Tex.App.— Texarkana 1989), *pet. dism'd per curiam,*

792 S.W.2d 81 (Tex.Crim.App.1990); *Rodgers v. State,* 725 S.W.2d 477, 480–81 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

Both of the reasons the prosecutor stated he relied upon to strike Wilhite are race neutral. As appellant conceded at oral argument, the record does not show the State failed to strike any other potential juror who had an arrest record and a family member involved in drugs. We conclude the record supports the race-neutral reasons provided by the State. We hold the trial court's findings are not clearly erroneous. We overrule appellant's third point of error.

## WAS THE INDICTMENT AMENDED AND IS THE EVIDENCE SUFFICIENT?

In his second point of error, appellant contends the evidence is insufficient to sustain his conviction because a fatal variance exists between the allegations in the original indictment and the State's proof at trial.

### A. The Original Indictment

■ The original indictment charged appellant and two others as co-conspirators with intent to possess cocaine. It alleged appellant agreed to engage in the conspiracy and committed an overt act because he "examined and negotiated to purchase a quantity of cocaine in an amount of 400 grams or more."

### B. Amendment of the Original Indictment

The State moved to amend the original indictment. The State's requested amendment was:

Replace everything between the words "did lawfully" and "contrary to the form of the statute" with the following:

Knowingly and intentionally agree with Billy James Fite and Leroy Curlin that they or one or more of them engage in conduct which would constitute the felony offense of possession of a controlled substance, to-wit: CO-CAINE, in an amount by aggregate

weight, including any adulterants or dilutants of 400 grams or more, and one or more of them performed an overt act, to-wit: examined and accepted a sample to facilitate the purchase of the above-described controlled substance, in pursuance of the aforementioned agreement with the intent that the offense of possession of a controlled substance be committed.

The trial court entered an order amending the indictment. This order contains the exact language set out in the State's motion to amend the indictment. This order also includes a finding that appellant received ten days' notice of the State's motion or waived the ten-day notice requirement found in article 28.10. *See* TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989).

### C. Appellant's Contentions

Appellant argues to order an indictment amended is not sufficient. He contends that record must affirmatively reflect the amendment was in fact made. He argues an amendment to a charging instrument takes effect when some written notation or interlineation appears on the charging instrument itself, not when the trial court grants the motion to amend. Appellant relies on *Rent v. State*, 771 S.W.2d 723, 727–28 (Tex.App.—Dallas 1989), *aff'd*, No. 1090–89 (Tex.Crim.App. Sept. 12, 1990) (reh'g granted), and *Bartley v. State*, 789 S.W.2d 288, 290 (Tex.App.—Dallas 1990, pet. ref'd), to support this argument. He asserts the State's attempt to amend the indictment was ineffective. He concludes the State proceeded to trial on its original indictment. We disagree.

### D. Applicable Law

Article 28.10 of the Texas Code of Criminal Procedure governs procedure involving amendments to charging instruments. *See* TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989). To preserve a complaint of error involving an indictment amendment, an accused must make a timely objection. *See State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim.App.1991); TEX.R.APP.P. 52(a). The record reflects appellant did not object that the State's amendment was ineffective or

say that the original indictment was the State's trial pleading. We hold that appellant presents nothing for review because he did not timely object. *Murk*, at 558.

In any event, appellant's reliance on *Rent* and *Bartley* is misplaced. A close reading of *Rent* reveals the order amending the information did not set out the substance of the amendment. The *Rent* opinion also reflects the trial court made the actual interlineation of the amendment to the information on May 23, 1988. Rent requested a statutory ten-day delay. The trial court denied Rent's request and set the case for trial on May 30, 1988. The import of *Rent* is that the trial court denied Rent the mandatory statutory ten days to prepare and file written pleadings. *See* TEX.CODE CRIM.PROC.ANN. art. 27.11 (Vernon 1989).

In *Bartley*, the State made an oral motion to amend the indictment, which the trial court granted. However, the trial court did not interline the amending language in the indictment. The transcript did not contain any indictment other than the original. Also, the trial court made no written order expressly including the amending language. In *Bartley*, this Court held an amendment does not become effective until the court physically alters the charging instrument to reflect the amendment, *or until some formal order memorializing the substance of the amendment appears in the record.* *Bartley*, 789 S.W.2d at 291 (emphasis added).

Neither *Rent* nor *Bartley* support appellant's assertion. We hold, under the facts of this case, the amendment to the original indictment was effective. We reject appellant's arguments to the contrary. In our view, this conclusion is dispositive of this point of error. However, in the interest of justice, we consider appellant's remaining arguments under this point.

### E. Original Indictment—Evidence Insufficient to Convict?

■ Based upon his assertion the State did not properly amend the original indictment, appellant then argues a fatal vari-

ance exists between the allegations of the indictment and the State's evidence at trial. Appellant bases his argument on the assertion there is no evidence he ever touched or examined the sample kilo of cocaine. Appellant contends the word "examine" requires proof of actual physical contact with the cocaine sample. The record reflects appellant was standing next to the undercover officer and saw his confederates physically handle the cocaine sample.

We disagree with appellant's definition of the word "examine." Examine means to look over, to inspect visually or by use of other senses. WEBSTER'S NEW INTERNATIONAL DICTIONARY 790 (3rd ed. 1981). Examination does not require physical handling of the item. The original indictment alleged appellant performed the overt act of examining and negotiating to purchase cocaine in an amount of 400 grams or more. One of the informants testified he negotiated with appellant for the ten-kilo sale. The undercover officer testified appellant stood next to him and watched his confederates physically examine the cocaine sample.

When we review a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could find the essential elements of offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). We hold any rational trier of fact could find the essential elements of the offense alleged in the original indictment beyond a reasonable doubt.

### F. Amended Indictment—Sufficiency of the Evidence

The indictment, as amended, alleged one or more of the conspirators performed the overt act of examining and accepting a sample to facilitate the purchase of cocaine as agreed between the conspirators. Reviewing the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the offense alleged in the amended indictment beyond a reasonable doubt.

We conclude the evidence is sufficient to convict appellant under either indictment. We overrule appellant's second point of error.

### THE STATE'S EXPERT WITNESS

■ The State called a Dallas police sergeant as an expert witness during the punishment phase of the trial. The court permitted the officer to testify, over appellant's objection, about the importation, packaging, and sale of cocaine; the magnitude of the sale in this case; and the correlation between the sale and use of cocaine and property crimes.

The court heard this expert witness's testimony out of the jury's presence. The court overruled appellant's objections to this testimony and admitted it before the jury. Appellant specifically objected to the officer's proposed opinion that cocaine use correlates to an increase in property crime because: (1) it was a vague effort at putting extraneous offenses into evidence; and (2) it was not relevant to any contested material issue in punishment.

### A. Standard of Review

The trial court determines the admissibility of evidence. TEX.R.CRIM.EVID. 104(a). The trial judge has considerable latitude to admit or exclude evidence on relevancy grounds. *See Green v. State*, 587 S.W.2d 167, 169 (1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). The standard of review is whether the trial court abused its discretion. *See Reece v. State*, 772 S.W.2d 198, 201 (Tex.App.— Houston [14th Dist.] 1989, no pet.).

### B. Application of Standard of Review to Facts

On appeal, appellant argues the officer's opinion was inadmissible because: (1) the evidence was not relevant to punishment; and (2) the prejudicial impact of the evidence outweighed its probative value under rule 403 of the Texas Rules of Criminal Evidence and rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See* TEX. R.CRIM.EVID. 403; TEX.R.APP.P. 81(b)(2).

Appellant's trial objection complained about extraneous offenses. Appellant did not object during trial that the prejudicial effect of the evidence outweighed its probative value. Appellant may not use an objection stating one legal basis to support a different legal basis on appeal. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App. 1990).

Appellant's second objection was that the testimony was not relevant to any contested material issue in punishment. Other appellate courts of this State have held evidence of this nature is relevant. It shows attempted possession of a quantity of a controlled substance more than an amount a person would normally have for his own personal use. Also, it allows the State to translate testimony into terms that are understandable to the jury. *See Enriquez v. State,* 501 S.W.2d 117, 120 (Tex. Crim.App.1973); *Morrow v. State,* 757 S.W.2d 484, 487–88 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd), *cert. denied,* 493 U.S. 921, 110 S.Ct. 285, 107 L.Ed.2d 265 (1989).

We conclude the officer's testimony as an expert was relevant to the punishment issue. This is because of the amount of cocaine appellant sought to distribute to users. The ultimate effect on the community is relevant to a jury's determination of what punishment to assess when the State alleges an aggravated charge. We hold the trial court did not abuse its discretion in admitting this evidence. *See* Tex.R.Crim. Evid. 104(a); Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a) (Vernon Supp.1991). We overrule appellant's fourth point of error.

### STATE'S JURY ARGUMENT— PHANTOM WITNESSES

In his second point of error, appellant contends the trial court erred in overruling his objection to the State's punishment argument. Appellant argues the State invited the jury to draw a negative inference from appellant's failure to call favorable witnesses. During punishment, the State argued:

Now, let's talk about this defendant over here. You heard him testify. Of course,

he had his wife come in here and say how much she loved him. What else is she going to say? She didn't even know who his friends were or who he was doing business with. Did you hear from anybody else? Did you hear from a preacher that tells you how good a man he is?

\* \* \* \* \* \*

Did you hear from a preacher or anyone saying what a God-fearing man he is? No. They have subpoena power. They can bring anybody down here they want to testify in behalf of this man. No you didn't hear that. He's supposedly been in business since he was seventeen. Did we hear from a banker? Did we hear from any people he did business with that said he's an honest man? No.... You didn't hear one good thing except from his wife about this defendant, so that ought to tell you something right away about his reputation in the community.

### A. Standard of Review

Proper jury argument by the State summarizes the evidence, makes reasonable deductions from the evidence, responds to opposing counsel's argument, or pleads for law enforcement. *McKenzie v. State,* 617 S.W.2d 211, 221 (Tex.Crim.App. [Panel Op.] 1981). The prosecutor may comment on a defendant's failure to call to attest to his reputation any witnesses or some particular known witness competent to give material testimony. *Montoya v. State,* 744 S.W.2d 15, 33 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Mosley v. State,* 686 S.W.2d 180, 183 (Tex.Crim.App.1985); *McKenzie,* 617 S.W.2d at 220. A prosecutor may not create witnesses and comment or speculate on what they might say. *Mosley,* 686 S.W.2d at 183; *McKenzie,* 617 S.W.2d at 221; *Fisher v. State,* 511 S.W.2d 506, 507 (Tex.Crim.App.1974).

We view complaints about improper argument in the context of the entire argument, keeping in mind the evidence presented. *See Mosley,* 686 S.W.2d at 183. We test whether the State's argument requires reversal on the basis of its probable

effect on the minds of the jury under the facts of each case. *Mayberry v. State,* 532 S.W.2d 80, 85 (Tex.Crim.App.1976) (op. on reh'g). If we determine the argument exceeds permissible bounds, we must determine whether the error was harmless.

### B. Appellant's Arguments

Appellant contends the argument was reversible error because the prosecutor created hypothetical witnesses, commented on appellant's failure to produce these witnesses, and speculated that appellant did not call the witnesses because their testimony would have been unfavorable to him. Appellant relies on *McKenzie* to support his argument.

In *McKenzie,* the defendant was the only witness to testify for the defense at the punishment phase of the trial. McKenzie sought probation and testified his supervisors were aware of his situation. He said if he was placed on probation, his employment would continue. There was no evidence in the record that McKenzie or any member of his family belonged to or attended any church. McKenzie did not claim to have attended a college or university, nor was there evidence he did.

During final argument the prosecutor noted certain types of people who did not testify on McKenzie's behalf. The prosecutor speculated McKenzie might call a minister, a college classmate, his employer, a neighbor, or parents of young children. The prosecutor also speculated on the testimony each of those witnesses might have given if called. Appellant contends the argument in this case is similar to that in *McKenzie.*

### C. The State's Argument

The State contends the prosecutor's argument in this case does not actually infer that a minister, business associate, or banker was a potential witness competent to give material testimony. The State argues the inference was not these particular witnesses existed, but that appellant did not call anyone other than his wife to testify in his behalf. The State relies on *Mosley* to support its position.

In *Mosley,* the State called three witnesses who testified Mosley's reputation for being peaceful and law-abiding was bad. Mosley did not call any witnesses, but he did testify he had no felony conviction. The prosecutor argued Mosley did not bring any witnesses to contradict the State's evidence of Mosley's bad reputation. The prosecutor pointed out Mosley brought no one—not a mother, father, brother, or sister—to testify on his behalf. His counsel objected that the State was creating witnesses and then complaining about them not being present.

*Mosley* held that although the above argument was close to that in *McKenzie,* it did not cross the line into improper argument. The *Mosley* court held, when read with the rest of the pertinent comments, it was evident that the prosecutor was not saying those particular witnesses existed. The court stated the prosecutor was emphasizing appellant called no one—not even anyone close to him—who might testify on his behalf. The *Mosley* court found *McKenzie* distinguishable because in *McKenzie* the prosecutor detailed what the witnesses might say. In *Mosley* the prosecutor only said appellant called no one to testify appellant's reputation was good, and the prosecutor did not speculate on what the uncalled witnesses might have said.

### D. Application of the Standard of Review to the Argument

Appellant testified he was in business in the Dallas area for more than seventeen years. He also testified he had banking relations in the past. His wife testified he was a loving person, a good husband, and a good father. She testified she did not know his friends or with whom he was doing business. We find the evidence supports the prosecutor's argument about appellant's failure to call a business associate or banker to attest to his reputation. However, there is nothing in the record to show that appellant or any member of his family belonged to or attended any church. The record does not support the prosecutor's argument about the failure to call a preach-

er. The preacher argument is outside the record and improper.

### E. Harm Analysis

That the argument was improper does not end our inquiry. We determine whether beyond a reasonable doubt the improper argument did not contribute to the conviction or to the punishment. *See Orona v. State,* 791 S.W.2d 125, 129–30 (Tex.Crim. App.1990); *Griffin v. State,* 779 S.W.2d 431, 433 (Tex.Crim.App.1989); Tex.R.App.P. 81(b)(2).

To determine whether argument is harmless, we must calculate the probable impact of the error on the jury in light of the other evidence. *See Belyeu v. State,* 791 S.W.2d 66, 74 (Tex.Crim.App.1989); *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). We examine the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. We consider how much weight a juror would place upon the error. We determine whether declaring the error harmless would encourage the State to repeat it with impunity. We focus our attention on whether the error might prejudice the jurors' decision-making process and whether the jurors were able to properly apply the law to the facts to reach a verdict. *Harris,* 790 S.W.2d at 587–88. We do not determine the harmfulness of the error simply by examining whether overwhelming evidence exists to support the accused's guilt. It is the effect of the error and not the existence of overwhelming evidence or the lack thereof that dictates our judgment. *Orona,* 791 S.W.2d at 130.

We conclude beyond a reasonable doubt the State's improper jury argument did not contribute to appellant's punishment. In reaching this conclusion, we bear in mind appellant had no previous felony conviction. We recognize he applied for probation. However, the evidence to support appellant's guilt was substantial. Appellant tried to buy a very large amount of cocaine. The jury heard testimony about the magnitude of the sale in this case and the correlation between the sale and use of

such a large amount of cocaine and property crime. After appellant's objection, the State did not unduly emphasize this aspect of the argument but went on to other matters supported by the record. In view of the entire argument, we consider the weight a juror would probably place upon the error as minimal.

We do not intend by this decision to condone argument by the State without support in the record. We anticipate the State will not repeat such argument with impunity. We conclude the error did not prejudice the jurors' decision-making process. The jurors were able to properly apply the law to the facts in order to reach a verdict. *Harris,* 790 S.W.2d at 587–88. We hold the improper argument was harmless beyond a reasonable doubt. Tex. R.App.P. 81(b)(2). We overrule appellant's first point of error.

We affirm the trial court's judgment.